## · RALPH *v.* THE STATE.

1. The constitutional right of one accused of an offense against the laws of this State to be confronted with the witnesses contemplates that they shall be examined in his presence and be subject to cross-examination by him.
2. Where a defendant is deaf and can not hear the evidence of the witnesses for the State, the presiding judge should permit some reasonable mode of having their evidence communicated to him.
3. Under the recitals of the bill of exceptions and the note of the presiding judge, there was no abuse of discretion in the manner in which this was done; nor does it appear that any injury resulted to the accused therefrom.

Submitted October 18,—Decided November 9, 1905.

Accusation of unlawfully pointing pistol. Before Judge Raines. City court of Dawson. July 25, 1905.

Ralph was tried in the city court of Dawson, upon an accusation charging him with pointing a pistol at another. The bill of exceptions sets out the contention of the plaintiff in error in the following language: "When the case was called for trial, defendant's counsel stated in his place that his client could not hear anything that the witnesses might state in their testimony in said case; that the defendant could read and write; and if the testimony should be written out, the same could then be read and understood by said defendant. Counsel for defendant in behalf of his client then asked the court, in view of the situation and in order to give the defendant his constitutional right to be confronted by the witnesses testifying against him, to have the evidence taken down and furnished to the defendant in writing, so that he might read it and thus be informed of what the witnesses might testify against him. The court declined to grant this request, stating that there was no official stenog-

rapher and that there was no way to have the evidence reported. Counsel then informed the court that he could get an expert typewriter to take the evidence and typewrite it as the witness testified on the stand, and let it be read by the defendant, and thus acquaint him with the testimony. His honor then stated that he could not allow this to be done, as it would take too much time, and that the only thing which he could allow would be to let the counsel write down the testimony as the trial progressed as usual and give it to his client on paper to be read by him. The trial of the case then proceeded in the ordinary way, and defendant was represented by only one attorney." The presiding judge added the following note: "The court allowed defendant's attorney to write out the evidence of the witnesses and show to his client. The court saw counsel writing and turn it over to defendant, but does not know what he had written for his client to see." The defendant was convicted, and excepted.

*James G. Parks,* for plaintiff in error.
*M. J. Yeomans, solicitor,* contra.

LUMPKIN, J. (After stating the facts.) Under the constitution every person charged with an offense against the laws of this State should be confronted with the witnesses testifying against him. Constitution, art. 1, par. 5, Civil Code, § 5702. This provision guarantees that witnesses for the State shall be examined in the presence of the accused and be subject to cross-examination by him. Confrontation in criminal law has been defined to be the act of setting a witness face to face with the prisoner, in order that the latter may make any objection he has to the witness, or that the witness may identify the accused. Black's Law Dict. "Confrontation;" Anderson's Law Dict. "Confront." In Mattox *v.* United States, 156 U. S. 237, Mr. Justice Brown, referring to a similar provision in the constitution of the United States, says: "The primary object of the constitutional provision in question was to prevent depositions or ex parte affidavits, such as were sometimes admitted in civil cases, being used against the prisoner in lieu of a personal examination and cross-examination of the witness, in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his

demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief." See also State *v.* Mannion, 19 Utah, 505; 45 L. R. A. 638; Summons *v.* State, 5 O. St. 325. If the accused be deaf or blind, this will not prevent his being subject to trial because upon being confronted by the witnesses his physical infirmity will lessen his capacity to utilize that right. The accused says that he is deaf but can read. Had he been both deaf and illiterate, certainly he could not claim that he could not be lawfully tried for a criminal offense. In the proper administration of justice, however, the court should give a person accused of crime a reasonable opportunity to obtain the benefit of this constitutional right. If he is deaf, such opportunity should be allowed for communication to him of the testimony of the witnesses by the sign language employed by deaf mutes, or by writing, or in some other manner which would be reasonable and proper, under the circumstances, to insure him a full and fair exercise of his legal rights. The exact manner in which this result should be arrived at must depend upon the circumstances of the case, and to a considerable extent be left to the sound discretion of the court. If there is no official stenographer, the court can not be required to stop the trial and incur the expense of employing one. To have the testimony of each witness taken down stenographically, and then arrest the progress of the trial until the stenographer can transcribe his notes and the defendant can read what had thus been written, would be cumbersome. Nor will the court be compelled to employ a typewriter for that purpose. The defendant, knowing of his infirmity, should make provision for his own assistance, and not require the court to practically destroy an orderly trial. Whether an expert operator upon a typewriter and a machine were accessible, or whether the use of such a machine in the court-house during the trial would interfere with the proper conduct of the business, were matters addressed to the sound discretion of the presiding judge. He allowed the counsel for the accused to write out and exhibit to him the testimony. It does not appear how many witnesses testified, or whether this was a matter of slight or grave inconvenience; nor does it appear that the accused was not fully apprised of the evidence introduced against him. It may be inferred from the judge's note that he allowed time and opportunity for the taking

down and exhibition to the accused of the testimony; and it is not shown that any harm resulted from the method adopted by the court.

Judgment affirmed.  All the Justices concur.