## TERRY v. STATE. (8 Div. 264.)

(Court of Appeals of Alabama. Aug. 4, 1925. Rehearing Denied Aug. 11, 1925.)

1. **Criminal law** ⊂═⇒642, 662(1)—Deaf-mute defendant must be provided with means to communicate to him nature of offense and testimony of witnesses.

In a prosecution for manslaughter, where defendant was a deaf-mute, and the court, upon being so informed, offered to swear an interpreter, if defendant would furnish one, defendant being unable to do so. *held* that, under Const. Bill of Rights, 1901, § 6, which guarantees accused the right to be heard, to know nature and cause of accusation, and to be confronted by witnesses, it was the duty of the court to provide necessary means to communicate to accused the nature of charge and testimony of witnesses.

2. **Homicide** ⊂═⇒163(2)—One accused of manslaughter may show general reputation for peace and quiet of deceased.

In prosecution for manslaughter, a refusal to permit defendant to show general reputation of deceased for peace and quiet was error.

3. **Homicide** ⊂═⇒167(3) — Evidence of threats against defendant by deceased improperly excluded.

In a prosecution for manslaughter, a refusal to allow defendant to show threats against him by deceased, was error.

4. **Criminal law** ⊂═⇒763, 764(23)—Instruction covering questions of fact held error.

Where, in a prosecution for manslaughter, the court's charge "that the killing, * * * when the defendant went in the house and came out with a gun, that a killing under those circumstances, the deceased being still in the yard, near the place of the original difficulty, would not establish self-defense," *held* error; question being one of fact for the jury.

5. **Criminal law** ⊂═⇒761(13)—Instruction that defendant unjustifiably killed deceased held to invade province of jury.

In prosecution for manslaughter, court's charge that "the defendant, having killed the man, having done it unlawfully, and not being justified on account of self-defense, is guilty of some offense," etc., *held* erroneous, being an invasion of the province of the jury.

6. **Homicide** ⊂═⇒118(3)—Defendant under no duty to retreat from own home when attacked.

In prosecution for manslaughter, deceased having been killed during an altercation at home of defendant, having attacked defendant with an iron bar and a knife, *held*, an instruction that, under the evidence, defendant was at his own home and under no duty to retreat therefrom was improperly refused.

7. **Criminal law** ⊂═⇒363—Statements constituting part of res gestæ improperly excluded.

In prosecution for manslaughter, a refusal to receive in evidence material statements

---

⊂═⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

made at the time and place of the difficulty was error, since these statements were res gestæ.

Appeal from Circuit Court, Lawrence County; James E. Horton, Judge.

Frank Terry was convicted of manslaughter in the first degree, and he appeals. Reversed and remanded.

Charge 2, refused to defendant, is as follows:

"I charge you that under the evidence in this case the defendant was at his own home, and he was under no duty to retreat therefrom."

G. O. Chenault, of Albany, for appellant.

Defendant's motion for an interpreter should have been granted. 2 Ency. Pl. & Pr. 769; Howard v. State, 165 Ala. 28, 50 So. 954; Mayor, etc., v. O'Heran, 149 Ala. 307, 42 So. 836, 13 Ann. Cas. 1131; Jackson v. State, 91 Ala. 55, 8 So. 773, 24 Am. St. Rep. 860; State v. Witherspoon, 231 Mo. 706, 133 S. W. 323; State v. Mikel, 125 Mo. App. 287, 102 S. W. 19; 2 L. R. A. (N. S.) 509, note. Charge 2 was correct, and should have been given. Watkins v. State, 89 Ala. 82, 8 So. 134; Bolton v. State, 209 Ala. 179, 95 So. 874. Statements forming a part of the res gestæ should have been admitted. 1 Mayfield's Dig. 800.

Harwell G. Davis, Atty. Gen., and Lamar Field, Asst. Atty. Gen., for the State.

The record shows that an interpreter was sworn and interpreted for the defendant; hence, if there was error in refusing defendant's motions, it was without injury.

BRICKEN, P. J. One of the principal questions presented calls for a construction of section 6 (Bill of Rights) of the Constitution of Alabama, 1901. This section provides, among other things, that in all criminal prosecutions the accused has a right to be heard by himself and counsel, to demand the nature and cause of the accusation, and to be confronted by the witnesses against him; also to testify in his own behalf if he elects to do so; nor shall he be deprived of life, liberty, or property except by due process of law, etc:

This defendant was charged with the offense of murder in the first degree. *He was a deaf-mute and had been so from his birth.* Not being able to speak or hear, the court was requested to appoint an interpreter so that defendant might be informed as to the nature and cause of the accusation against him, and also as to the testimony of the witnesses who appeared against him. In this connection the following occurred, as shown by the record:

"The defendant's attorney made known to the court that the defendant was deaf and dumb, could neither hear nor talk, and, as no interpreter had been sworn to interpret to the defendant, the indictment and the proceedings, defendant's attorney moved that said cause be continued until an interpreter could be procured and sworn. Said attorney stated to the court that it was the constitutional right of the defendant to be confronted by the witnesses against him, and that it was his idea that that meant that the defendant should be confronted in such a way as to be informed of what was taking place, and to know what the witnesses were saying, and to hear or be informed of the contents of the indictment. The court then offered to swear an interpreter for the defendant, if the defendant would furnish one or produce one to be sworn. The defendant's attorney stated to the court that he was unable to furnish an interpreter. The court then and there overruled the motion to postpone the trial to secure an interpreter. The defendant's attorney then and there excepted. The solicitor then read the indictment in the presence of the defendant, the defendant being unable to hear the same, and not entering any plea. The court then entered a plea of not guilty for the defendant. The defendant's attorney then requested that an interpretation of the indictment be made to the defendant before proceeding. The court then inquired of defendant's attorney if he had an interpreter, and, being answered in the negative, he directed the trial to proceed, to which defendant's attorney then reserved an exception. The defendant's attorney requested that an interpreter be furnished to communicate to the defendant the testimony of the witnesses as they go along. The court again announced that he would permit the defendant to have an interpreter. The defendant's attorney again stated that he was then unable to furnish any interpreter and that it was his theory that it was the duty of the state to let defendant understand what was going on. The court then directed the court reporter to let the record show that the court offered to swear an interpreter that the defendant may furnish, and that the defendant failed or refused to furnish one. The defendant's attorney stated to the court that he did not refuse to furnish an interpreter, and the court stated that he failed or refused, one or the other. It was then admitted in open court that the defendant was deaf and dumb."

[1] The exceptions here reserved were well taken, and must be sustained. As stated, the Constitution of this state expressly provides that an accused has a right to be heard by himself and counsel, also, to demand the nature and cause of the accusation against him, and, further to be confronted by the witnesses who are to testify against him. In construing this constitutional provision it needs no discussion in deciding that all this must be done in a manner *by which the accused can know,* the nature and cause of the accusation he is called upon to answer, and all necessary means must be provided to this end. It must also be provided, and the law so contemplates, that the accused must not only be *confronted* by the witnesses against him, but he must be accorded all necessary means to know and understand the testimony given by said witnesses, and must be placed in a condition where he can make his

plea, rebut such testimony, and give his own version of the transaction upon which the accusation is based. This the fundamental law accords, and for this the law must provide. These humane provisions must not, and cannot, be dependent upon the ability, financial or otherwise, of the accused, as here appears. The constitutional right, supra, would be meaningless and a vain and useless provision unless the testimony of the witnesses against him could be understood by the accused. Mere confrontation of the witnesses would be useless, bordering upon the farcical, if the accused could not hear or understand their testimony. So, also, as to the nature and cause of the accusation. In the absence of an interpreter it would be a physical impossibility for the accused, a deaf-mute, to know or to understand the nature and cause of the accusation against him, and, as here, he could only stand by helplessly, take his medicine, or whatever may be coming to him, without knowing or understanding, and all this in the teeth of the mandatory constitutional rights which apply to an unfortunate afflicted deaf-mute, just as it does to every person accused of a violation of the criminal law. In other words the physical infirmity of this appellant can in no sense lessen his rights under the Constitution, and, in the proper adminstration of its laws, this great and sovereign state must and will accord the means by which its citizens, humble and afflicted though they may be, shall receive all the rights, benefits, and privileges which the Constitution, laws, regulations, and rules of practice provide.

What has been said is in line with the case of Ralph v. State, 124 Ga. 81, 52 S. E. 298, 2 L. R. A. (N. S.) 509. The court there said:

"The constitutional right of one accused of an offense against the laws of this state to be confronted with the witnesses contemplates that they shall be examined in his presence and be subject to cross-examination by him. Where a defendant is deaf and cannot hear the evidence of the witnesses for the state, the presiding judge should permit some reasonable mode of having their evidence communicated to him."

It being conceded in open court that this appellant is a deaf-mute, we hold that the court erred in not providing necessary means for communicating to him the nature and cause of the accusation, and also the testimony of the witnesses against him in order to insure him a full and fair exercise of his legal rights above referred to. The rulings of the court in this connection alone being patently, manifestly, and highly injurious to the substantial rights of the defendant must result in a reversal of the judgment of conviction appealed from. The motions and exceptions here made and reserved were timely, and the motions should have been granted.

[2-5] The next error we note is the refusal of the court to permit the defendant to show the general reputation of deceased for peace and quiet. In fact the court committed numerous errors in this connection in its rulings upon the testimony and also in the oral charge. There was ample evidence tending to show self-defense upon the part of the defendant, and upon the theory that there was no such evidence the court was led into these several errors. In many instances the evidence adduced disclosed that the fatal difficulty occurred at the home of the defendant; that an altercation arose and remained a continuous transaction until the fatal shot was fired by the defendant; that the deceased was armed with an iron bar in one hand, and a knife in the other, and was attempting to attack defendant with one or both at the time he fired the shot. The court committed error by not permitting defendant to show threats by deceased against defendant; also, in charging upon the effect of the evidence where he said to the jury:

"In other words, gentlemen, as the court construes the law, as applied to the evidence in this case, that the killing * * * under the circumstances, when the defendant went in the house and came out with a gun, that a killing under those circumstances, the deceased being still in the yard, near the place of the original difficulty, would not establish self-defense."

This was clearly a question of fact for the jury, and not one of law for the court. Further, the court erred in charging the jury:

"The defendant having killed the man, having done it unlawfully, and not being justified on account of self-defense, is guilty of some offense," etc.

This was a clear invasion of the prerogatives of the jury, and therefore erroneous. The court also erroneously charged the jury orally: "If you believe the evidence beyond a reasonable doubt, you will find him guilty of some offense." The exceptions reserved in connection with those and other utterances of like import, by the court, are well taken.

[6] Charge 2, refused to defendant, properly states the law; its refusal was error.

[7] In its rulings upon the testimony the court committed reversible error in several instances by not allowing in evidence several material statements made by different parties at the time and place of the difficulty, as these statements were clearly of the res gestæ.

Other questions presented need not be discussed.

For the errors designated, the judgment of conviction in the circuit court is reversed and the cause remanded.

Reversed and remanded.