195 So. 290

## SMITH v. STATE,
### 6 Div. 547.

Court of Appeals of Alabama.

Feb. 13, 1940.

Rehearing Denied Feb. 27, 1940.

Pennington & Tweedy, of Jasper, for appellant.

Thos. S. Lawson, Atty. Gen., and Wm. H. Loeb Asst. Atty. Gen., for the State.

## PER CURIAM.

The homicide in this case grew out of a difficulty between two substantial citizens of Winston County, Alabama. Prior to the time of the difficulty the parties had been friends.

The evidence tends to show that the two parties fell out over the failure of the dead man's son to be reelected as a teacher of the school in the community, of which school the defendant was one of the Trustees. The testimony, further, tends to prove that after a few words Drake, the dead man, struck the defendant over his eye with his fist and had his arm drawn back to strike him again when the defendant struck him one time with a knife, in a vital place in the neck, from which wound Drake died.

The record in this case beginning with the selection of the jury and on through the taking of the testimony, the charge of the Court and the verdict, indicates a trial of more than ordinary interest and a tenseness rarely to be found in the trial of ordinary cases.

The only two witnesses who testified to the beginning of the difficulty were the defendant, and a witness by the name of Rufus Mann, who was examined as a witness for the State. Mann testified that he saw the trouble between the two men resulting in the death of Drake; that the first thing he saw was Drake hit Smith above the eye, then he hit him again; Smith threw up his left hand and knocked off a lick and then struck Drake on the left side. This witness saw no knife in the hand of either party. This, in brief, describes the difficulty between the parties resulting in the death of Drake. There was some evidence that after the blow was struck, Smith did everything he could to try to stop the flow of blood.

On the trial of the case and before the defendant testified, the character witnesses for the defendant should have been limited in their testimony on cross-examination to what they knew of defendant's character before the difficulty; and to permit such witnesses to testify as to what they had heard since the difficulty and the death of Drake was error. As illustrative of this point, when these witnesses were testifying as to the defendant's character, the defendant had not taken the stand.

The witness Pickard was allowed to testify, over the objections and exceptions of the defendant, that since this prosecution he had heard about the trouble he (defendant) had with a Mr. Drake about a schoolhouse, building a house, shingling it or something.

The Court stated in making his ruling that: "The court states the time involved is the time of the occurrence. * * * but the court is ruling if the man has learned since the occurrence what his reputation was then, he can say, it does not make any difference when he learned it; when you say now what it was then."

The foregoing involved several rulings of the Court on this question, but it is unnecessary to set them out, other than to say they were all to the same effect.

In the case of McKenney v. State, 17 Ala.App. 117, 82 So. 565, 566, Bricken, J., used this language: "If reference was had to the character of the defendant, the witness was confined to what he knew of that character before the difficulty, not what he had heard since that time."

This same question was before this Court in Mitchell v. State, 14 Ala.App. 46, 70 So. 991, 993. In that case the opinion was written by the present Mr. Justice Brown of the Supreme Court, who was at that time a member of this Court, and in holding that a witness could not testify with reference to character as to matters coming to his knowledge after the alleged commission of the crime, the Justice said: "Repute concerning specific acts affecting the character of one accused of crime after its commission too often emanate from sources of prejudice, interest, and bias growing out of the alleged criminal act, and to allow testimony affected with such infirmities would offer too much incentive for the circulation by interested parties and their friends of false reports, for the purpose of destroying the general reputation of the accused and depriving him of the benefit of a good character."

In the case of Windom v. State, 18 Ala.App. 430, 93 So. 79, 82, this Court said: "* * * * on cross-examination of the witness it being developed that the information on which the opinion as to the general character of the defendant was obtained after the commission of the act for which defendant was being tried, it was error for the court to overrule defendant's motion to exclude the testimony."

It is true that the witness Pickard testified to the good character of the defendant, but the State had no right to make proof of incidents brought to the knowledge of the witness after the beginning of this prosecution. The State might have asked the witness the question, if he had not heard of certain facts; but the proof of the facts themselves, and not relating to the issues then being tried, was in itself illegal.

■ On the examination of the witness Swearigan, a witness for the State, the following took place: "Mr. Smith asked me if I got whipped or had any trouble; got whipped as a result of the recent election." Thereupon the Trial Court said: "Do you expect to show by this witness there was a conversation of which this was a part and leading up to a statement made by Smith with reference to some trouble with Drake?" And same was answered by Mr. Hunter, counsel for the State: "Yes Sir. It is in one way the nature of a threat and another way followed up by Smith immediately after the killing." The witness then answered, over the objection and exception of the defendant: "He asked me if I had got a whipping as a result of the recent election or had any trouble about it—I don't remember the exact words. He had reference to that."

This testimony was not admissible under any phase of the case. It was not a threat, it was not in the nature of a threat; it had no relation to the fatal difficulty. It did not tend to impeach any witness. It was entirely irrelevant, immaterial and illegal, and injected into the case issues not contemplated by the charge. Savage v. State, 20 Ala.App. 97, 100 So. 919; Davis v. State, 216 Ala. 475, 113 So. 393.

It would appear from the examination of this witness that an effort was being made to connect this defendant in some way with an election recently held in Haleyville. All of which was entirely foreign to any issues here.

■ It was error for the Court to permit the witness Swearigan, over the timely objections and exceptions of the defendant, to testify as to advice which he said he gave to the defendant in the conversation after the homicide when he said: "That they were referring to the previous election." The testimony was hearsay and irrelevant. Davis v. State, 216 Ala. 475, 113 So. 393.

■ In the oral charge of the Court, the Judge in charging upon the law of self-defense correctly gave the first two elements necessary to authorize the defendant to invoke that doctrine, but when he came to the third element he said: "it must have been at the time he committed his act there was open to him no avenue of escape whereby he could retreat without increasing his peril."

The rule with reference to this is stated in Oldacre v. State, 196 Ala. 690, 72 So. 303, 304, wherein it is stated: "The right to kill in self-defense does not arise until the defendant has offered or attempted to retreat, or to decline the offered combat, provided, however, there be open to him a reasonably safe mode, and that retreat would not increase his danger."

The charge of the Court, to which exception was duly reserved, places too great a burden upon the defendant. The rule is that "there must have been no other reasonably safe mode of escape, by retreat or by avoiding the combat." Wilkins v. State, 98 Ala. 1, 13 So. 312, 313.

■ All of the cases upon this subject recognize the rule that a defendant is not required to retreat where to do so would reasonably appear to increase his peril to life or limb. Kirkland v. State, 141 Ala. 45, 37 So. 352; Love v. State, 17 Ala.App. 149, 82 So. 639. The fact that the given charges, requested by the defendant, stated the rule correctly does not cure the error of the Court in the oral charge.

■ The Attorney General insists that even if there was error on the part of the Court in the admission of the testimony, hereinabove referred to, that such errors did not injuriously affect the rights of the defendant and, therefore, under Supreme Court Rule 45 they should be held to be error without injury.

There might have been merit in the contention of the Attorney General in ordinary cases, but the record in the case at bar brings to this Court a full account of the

entire trial and, in a measure, brings before us what Justices Sayre and Sommerville refer to as the "atmosphere" of the trial.

After reading this entire record and considering the same in connection with the method of examination of witnesses, the errors committed, the facts in the case, the verdict of the jury, we are convinced that the errors pointed out did affect the defendant's substantial rights; and that he should have another trial freed not only from the errors appearing on this record but in so far as is possible a trial from which all outside influence is eliminated.

There are numerous objections and exceptions in the record which we have not deemed it necessary to pass upon as the same will not probably occur on another trial.

The trial judge, therefore, should have granted the motion for a new trial and, for the errors pointed out, the judgment is reversed and the cause is remanded.

Reversed and remanded.

NOTE. The foregoing opinion was prepared by the late Judge SAMFORD. Since his untimely death, this court has considered this case En Banc. We are clear to the conclusion that said opinion is correct in all things; therefore, it is hereby approved and is made and adopted as the opinion of this court.