39 So.2d 247

### ISON v. STATE.

5 Div. 259.

Court of Appeals of Alabama.

Jan. 11, 1949.

Rehearing Denied Feb. 1, 1949.

R. C. Wallace, of LaFayette, for appellant.

A. A. Carmichael, Atty. Gen., and L. E. Barton, Asst. Atty. Gen., for the State.

BRICKEN, Presiding Judge.

Upon the trial of this case in the court below there were some slight conflicts in the evidence, and these questions were for the jury to consider and determine.

The unfortunate homicide complained of in the indictment occurred in the dwelling house, or home, of both of the principals, i. e. the deceased and this appellant, and said principals were brothers. The evidence without dispute disclosed that Guy Ison, the deceased, "had been drinking all day and was under the influence of intoxicating liquors; that 'he was drunk." These brothers lived in the home with their afflicted Mother, who recently had had a stroke. The evidence shows that, "Guy, the deceased, his Mother and a hired maid were in the front room and that Guy wanted the piano played by the maid, which she did, and the deceased got to dancing, and his afflicted Mother got after him about dancing and Guy cussed her, and choked her around the neck, whereupon the colored maid who had been playing the piano, went to the assistance of Mrs. Ison and the deceased struck her with an ice pick. Upon hearing the commotion and his Mother hollering, the appellant who was in an adjoining room, went in there," and as to this the defendant testified in substance as follows: "I was in my room across the hall from where the piano was being played. I heard my mother cry out, and I stepped out in the hall to see what was the matter and asked her what was the matter and she said Guy had choked her. I told him 'You can't do that,' I says, 'I don't allow nobody to run over my mother,' and he said, 'What the damn hell you got to do about it,' and started on down towards me with his hand out, he had that ice pick in it, and I went on back to the next room and he went back to his room and when he went in his room, why, I come out and he come out and went out the door and told me to come out there and he would settle it with me. I told him I didn't want to have no trouble with him. He went on out and I stepped back in the hall where my mother was. He come in the door and stuck me in the arm twice and we went together out the door.

"Q. Which arm did he strike you on? A. The right one.

"Q. Is there a scar on your arm now? A. There is a scar where 'he stuck me.

"Q. Go ahead and tell the jury what happened from then on? A. He came in the hall and we hung up there scuffling and he stuck me with the ice pick there in the arm. We scuffled there in the hall and we scuffled on out the door and then on out to where I reached and got that knife off that shelf."

The record shows the following:

"Q. Was there a wash shelf out there? A. Yes, sir.

"Q. That is where you got the knife? A. Yes, sir.

"Q. Is that the knife you got? A. Yes, sir.

"Q. What did you do with the knife? A. I struck at Guy.

"Q. You know whether you hit him or not? A. No, sir, I couldn't say.

"Q. Go ahead and tell the jury what you was doing all that time and what he was doing all that time? A. He was hitting at me, fighting and he stuck me in the arm with that ice pick and we both fell outdoors together.

"Q. Show the jury those scars."

(Thereupon the witness exhibited his arm to the jury.)

"Q. Is that a place there where he stuck you with that pick? A. Yes, sir.

"Q. Is this another place? A. Yes, sir."

The testimony of each witness who testified in this case tended to show that appellant undertook and tried in every way to avoid a difficulty with his brother. Wilma Price testified that appellant stated to his brother "I don't want to fight you Guy." Mrs. Ison, the Mother of both of the boys, testified:

"Q. Did you see Major, the defendant here, when he came in and asked what the trouble was? A. Yes, sir.

"Q. Did he have anything in his hand at that time? A. No sir, he didn't have a thing, he didn't have nothing, he just told Guy, he asked him, Guy, I don't want to fuss with you, I don't want to hurt you or you hurt me, we been working together all the time, and we don't want to fight, I don't want to hurt you at all." See also the testimony of defendant quoted hereinabove.

■ Pending the trial numerous objections were interposed, but in many instances no exceptions were reserved to the adverse rulings of the court. It follows, of course, as to this, no questions are presented for review.

On direct examination of the Sheriff Abney, the principal State witness, he testified he had possession of the knife purported to have been used by the defendant in the difficulty, and that some one had brought it to him in his office. On cross examination as to this the record shows the following:

"Q. Where did you get that knife from? A. It came from out there.

"Q. Whereabouts from out there, who gave it to you?

"The Witness: Judge, have I got to tell that?

"The Court: Be all right to tell it, I don't know anything about the facts.

"Q. Where did you get the knife? A. Where did I get the knife?

"The Court: Where were you when you got the knife?

"The Witness: In my office.

"Q. I will ask you if from the same person that brought you that knife if you asked him about the ice pick? A. I did.

"Q. Did he tell you that he had the ice pick in his car, that he had the ice pick? A. No, sir.

"Q. Who was it that brought you the knife?

"The Court: I am not going to make him answer that, Mr. Wallace.

"Mr. Wallace: We reserve an exception. We certainly think it is competent."

■ In this ruling complained of we are of the opinion the court unduly abridged defendant's right to cross examine the witness. It is the expressed law, "The right of cross-examination thorough and sifting, belongs to every party as to the witnesses called against him." Title 7, Section 443, Code of Alabama 1940.

■ Refused charge 5, should have been given and its refusal was error. It was a proper charge in the case under the undisputed evidence. Hutcheson v. State, 170 Ala. 29, 32, 54 So. 119, 120. In said case the Supreme Court said of a similar charge: "Charge 25, requested by the defendant, should have been given. The evidence was without dispute that the killing took place in the dwelling house of both

defendant and deceased. Defendant was the wife of deceased, and they were living together in this house. There must be somewhere a person may stop and defend himself or herself, when they have the right otherwise to do so. The fact that two may live in the same house, have the same dwelling, or place of business does not take away from either in favor of the other the right to stop there and defend himself. Jones v. State, 76 Ala. 8."

Reversed and remanded.