The defendant was convicted of the second degree murder of Carrie Houston "by beating her with a tire tool, shovel" or by means unknown. Sentence was fifty years' imprisonment.
The two issues raised on appeal stem from the hearing difficulties suffered by prosecution witness Percy Thomas.
 I
Here Mr. Thomas was not totally deaf but only hard of hearing although to a very significant degree. However even as to a deaf mute "(i)t is well settled by modern authority that it is permissible for such witness to testify against the objections that the party against whom such testimony is given will be put to great disadvantage in cross-examination to test the witness's credibility". Burgess v. State, 256 Ala. 5, 8,53 So.2d 568, 571 (1951); Hyman v. State, 338 So.2d 448, 453
(Ala.Cr.App. 1976); Brown v. State, 331 So.2d 820, 826
(Ala.Cr.App. 1976).
 "A deaf mute is not disqualified to be a witness by reason of such handicap. A deaf mute who can read and write, may give his testimony by the procedure of written questions to him and his written replies thereto and, if he can be communicated with by signs, his testimony may be given through an interpreter who understands such signs. In determining qualifications of a deaf mute to testify and the selection and qualification of the interpreter, much must be left to the sound discretion of the trial judge who has full opportunity to see and observe the witness and the interpreter in the presence and the hearing of the interested parties and their counsel. While a deaf mute may testify, the opposing party is entitled to request a written charge to the jury that the disability of the witness may be considered as bearing on the weight to be given the witness' testimony." C. Gamble, McElroy's Alabama Evidence, § 94.01 (4).
 II
The State was properly permitted to use an "interpreter" in examining Mr. Thomas.
 "The use of an interpreter to convey a witness' testimony to the jury is a practice approved by the judiciary. The determination of whether an interpreter should be used and whether a person is properly qualified to act as an interpreter rests largely within the discretion of the trial court. *Page 372 
"The constitutional right of an accused to be confronted with the witnesses against him requires the court to provide a deaf accused with an interpreter to interpret to the accused the testimony given against him. This requirement permits the accused to properly cross examine or aid his counsel in cross examining the witnesses against him.
 "It should be pointed out that an interpreter is subject to impeachment the same as is any other witness called to testify." McElroy, § 125.01.
Here the "interpreter", John Hall, lived in the same neighborhood as Mr. Thomas. Mr. Hall was also a prosecution witness.
Defense counsel objected "for the record" but did not assign any specific ground. Unless the evidence objected to is patently illegal or irrelevant, an overruled general objection is insufficient to predicate error on appeal. McElroy, § 426.01 (8). On cross examination, defense counsel requested and received "the benefit of the interpreter".
In "interpreting" the testimony of a witness, an "interpreter" should be placed under oath. McElroy, § 125.01. Here, however, Mr. Hall did not translate or give the meaning of Mr. Thomas' answers but only asked him questions so that Mr. Thomas could understand the questions asked by the district attorney and defense counsel. Since Mr. Hall did not testify to what Mr. Thomas was saying or attempting to say, there was no need to place Mr. Hall under oath.
Consequently, we find that there was no proper objection to the use of the interpreter, that even if there were proper objection, it was waived when defense counsel had the "benefit" of the interpreter and that the use of Mr. Hall in examining the witness was proper.
We have searched the record for error prejudicial to the defendant. Finding none, we affirm the judgment of the Circuit Court.
AFFIRMED.
All Judges concur.