BOWEN, Judge.
The defendant was indicted for the first degree murder of his wife, Lucille T. Williams, “by beating, kicking or stomping her.” A jury convicted him of manslaughter in the first degree and fixed his punishment at ten years’ imprisonment.
I
The defendant contends that a statement given to the police after his arrest was involuntary because it was obtained after he elected to exercise his constitutional right to counsel before questioning under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
*297 Around 3:30 on the morning of November 6,1978, the defendant telephoned the Hamilton Police Department. When an officer arrived fifteen minutes later, the defendant told him, “I can’t wake her up. * * * We’d been drinking last night and we had a fight, and I beat her up pretty bad and then I went to bed. * * * Now I can’t wake her up.” The defendant was arrested and placed in the Marion County Jail around 4:00 that morning. The defendant telephoned his sister when he first arrived at the jail. At that time he did not tell her that he wanted a lawyer.
Beginning at 6:10 A.M. a statement was taken from the defendant. The entire conversation between the defendant and the investigating officers was tape recorded: “Everything that was said was recorded.”
The transcript of the tape recording shows that the defendant was warned of his constitutional rights[1] and signed a paper acknowledging this. After giving his name, date of birth and address the following occurred:
“Q. Bunky, if you will, just tell us what happened over there last night.
“A. Well, now you’ve advised me that I don’t have to tell anything till I get a lawyer and I intend to get a lawyer and so I don’t know-I found Lucille there this morning a laying in the floor and I couldn’t her (sic) no breathe or breathe or nothing and I thought she must be dead and she is.”
After this the questioning of the defendant continued until the following occurred:
“Q. Okay, when you woke up, did you find her in the same position she was when you went to bed?
“A. I don’t know. I think if I’m gonna have a lawyer, I need a lawyer present while I’m talking to you.”
Despite this statement the questioning of the defendant continued again, however the trial judge wisely excluded the portion of the interrogation following this request for an attorney.
At the hearing on the motion to suppress the confession the following testimony was elicited from the defendant:
“Q. Nobody at that time coerced you about making a statement against your will?
“A. No, Sir. They may have after I said I wanted an attorney. Undoubtedly somebody kept questioning me after I said that.
“Q. Is what you said there, regardless of what you said, did you mean to say it voluntarily, or did somebody make you say it?
“A. I said it voluntarily.”
Miranda commands that, if a defendant once asserts his right to consult with counsel and “interrogation continues without the presence of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel.” Miranda, 384 U.S. at 475, 86 S.Ct. at 1628. Under the circumstances of this case, we do not think that the officers were required to initiate “some form of inquiry designed to clarify the defendant’s intentions.” Kennedy v. Pinkney, 473 F.Supp. 1279, 1284 (C.D.Ill.1979); United States v. Chansriharai, 446 F.Supp. 107, 109 (S.D.N.Y.1978).
“An inference of a waiver may be drawn from the making of a statement after warnings have been given and when the defendant was aware of his right not to speak.” Sullivan v. State, 351 So.2d 659, 664 (Ala.Cr.App.), cert. denied, Ex parte Sullivan, 351 So.2d 665 (Ala.1977).
The statements in United States v. Hines, 605 F.2d 132, 134 (4th Cir. 1979), are applicable to this case.
*298 “A defendant who has been fully informed of his rights, who understands those rights, and who nevertheless spontaneously and voluntarily discloses information to persons he knows to be law enforcement officers, may not invoke Miranda to exclude his statement at trial. In that situation, no sixth amendment right is violated. Miranda v. Arizona, 384 U.S. 436, 478, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); United States v. Grant, 549 F.2d 942, 946 (4th Cir. 1977). These principles are applicable to Hines (the defendant). It was he who spontaneously initiated the discussion about his involvement with the FBI. The agent’s subsequent inquiry sought only clarification of this aspect of the incident. After answering the agent, Hines voluntarily, and not in response to any interrogation, described his participation in the counterfeiting transactions. Hines is well educated and he fully understood his rights. There is no evidence of any improper conduct on the part of the agent. Moreover, Hines’ statement was consistent with his defense. These facts buttress the inference of an implicit waiver of his right to counsel and establish that his statement was voluntary. In these circumstances there was no violation of Hines’ sixth amendment rights.”
II
The trial judge refused one hundred and nineteen charges requested by the defendant.
Most of these requested charges were properly refused because they were covered in the court’s oral charge. Others were affirmative in nature or not predicated upon a belief from the evidence, Thompson, 369 So.2d 50 (Ala.Cr.App.1979), and for these reasons their refusal was proper.
III
The undisputed and uncontradict-ed evidence shows that the homicide occurred in the house occupied by the defendant and his wife, the deceased. The trial court charged the jury on the rule that requires retreat as one of the elements to sustain a plea of self-defense. The court also gave defendant’s requested charge number 86 which reads as follows:
“The Court charges you that the law does not require one who is assailed at his own dwelling to retreat from, but the law permits him, and says that it is his right, to stand his ground and kill his assailant if it necessary so to do to save his life, or to protect himself from great bodily harm, provided he was without fault in bringing on the difficulty; and in this case the Court charges the jury that if they believe from the evidence that the deceased so acted as to create in the mind of defendant reasonable belief that he was in danger of life or sustaining great bodily harm, at the hands of the deceased, then the defendant, under the law, had a right to strike deceased and take her life, if such striking was necessary to protect his own life, or from sustaining great bodily harm at the hands of the deceased.”
The State’s argument that by giving the requested instruction the trial court cured any error in charging the jury that the defendant had a duty to retreat is without merit simply because the jury was never instructed that this particular defendant did not have a duty to retreat. Under the circumstances we are not willing to declare the error harmless. Vinson v. State, 32 Ala.App. 74, 22 So.2d 341, cert. denied, 247 Ala. 22, 22 So.2d 344 (1945); Smith v. State, 29 Ala.App. 212, 195 So. 290, cert. denied, 239 Ala. 301, 195 So. 293 (1940).
Defense counsel repeatedly and strenuously objected to the court’s instructions on the defendant’s duty to retreat. The trial court refused several written instructions which charged that the defendant had no duty to retreat under the circumstances of this case.
A person attacked in his own dwelling is not bound to retreat before defending himself. Jones v. State, 76 Ala. 8 (1884); Bryant v. State, 252 Ala. 153, 39 So.2d 657 (1949).
*299 The rule was stated in Ison v. State, 252 Ala. 25, 26, 39 So.2d 249 (1949) that if there is evidence offering an inference that the defendant willfully engaged in the altercation culminating in the death of the deceased a requested charge that there was no duty to retreat should be refused. Here, only speculation may be substituted for such an inference. Ison v. State, 34 Ala.App. 263, 39 So.2d 247, cert. denied, 252 Ala. 25, 39 So.2d 249 (1949). The defendant was the only witness to the confrontation that resulted in his wife’s death and he was so intoxicated that even he could not remember all of the details. However, his testimony does show that his wife was the aggressor. The State presented no evidence to dispute this.
This issue has recently been treated in Wilkinson v. State, 374 So.2d 396 (Ala.Cr.App.), cert. denied, 374 So.2d 400 (1979); Wilkinson v. State, 361 So.2d 400 (Ala.Cr.App.), cert. denied, 361 So.2d 405 (1978); Usrey v. State, 54 Ala.App. 448, 309 So.2d 485, cert. denied, 293 Ala. 776, 309 So.2d 489 (1974). In the following cases the conviction was reversed for the failure of the trial judge to give the requested instruction that the defendant had no duty to retreat. Hutchinson v. State, 170 Ala. 29, 54 So. 119 (1910); Watts v. State, 177 Ala. 24, 59 So. 270 (1912); Mosley v. State, 22 Ala.App. 95, 112 So. 811 (1927); Terry v. State, 21 Ala.App. 100, 105 So. 386 (1925); Resmando v. State, 24 Ala.App. 566, 138 So. 425 (1931).
In Wilkinson, 361 So.2d at 404, this Court held that “it is not error to ‘mention the ordinary rule that requires retreat’ and then declare to the jury that the instant defendant owed no such duty.” Wilkinson, 374 So.2d at 399. Here, as in Usrey, 54 Ala.App. at 451, “the evidence was unequi-vocably clear that the appellant was in his own home where he had a right to be, and there was no factual issue on retreat for the jury to decide.” For this reason, the conviction of this defendant is reversed.
REVERSED and REMANDED.
All Judges concur.

. The defendant was warned:
“Q. . . Anything you say can and will be used against you in court. You have the right to talk to a lawyer for advice before asked any questions, to have him with you during questioning. If you can’t afford a lawyer, one will be appointed without cost to you before any questioning, if you wish. If you decide to answer questions now without a lawyer present, you still have the right to stop answering at any time you wish.”