The defendant was indicted and convicted for burglary in the first degree. Alabama Code Section 13A-7-5 (1975). He was sentenced as an habitual offender to fifteen years' imprisonment.
 I
The defendant, a deaf-mute, argues that the trial judge erred in failing to appoint an interpreter at his arraignment.
"The constitution requires that a defendant sufficiently understand the charge against him to be able to assist in his own defense. Ensuring that the defendant has that minimum understanding is primarily the task of the trial judge."Ferrell v. Estelle, 568 F.2d 1128, 1132 (5th Cir. 1978). Terryv. State, 21 Ala. App. 100, 105 So. 386 (1925), specifically recognized that Ala. Const. art. I, Section 6, requires the trial court to provide the necessary means to communicate to a deaf-mute accused the nature of the charge against him and the testimony of the witnesses at trial.
Although there was no interpreter present at the defendant's arraignment, the record supports the judicial findings made both at arraignment and on the overruling of the motion for new trial that the defendant understood the nature and cause of his accusation.
The circuit judge who arraigned the defendant "looked the defendant in the face" as he spoke to him and wrote notes to him. The defendant "nodded" when asked if he understood. There is evidence in the record that the defendant can communicate, at least to some degree, by writing. This Court has recognized that a deaf-mute may testify at trial through written questions and answers. Todd v. State, 380 So.2d 370 (Ala.Cr.App. 1980), and cases cited therein. The judge entered the following order and findings:
 "The Court finds that the defendant is a deaf-mute. The defendant read the indictment and in answering written questions, the defendant nodded his head that he had read it, that he had no money and that Pete Johnson is his appointed attorney. The defendant pleads not guilty and that he understands what he is charged with, and leave of Court is hereby granted to defendant, . . . to interpose any special pleas. . . . It is ordered by the Court that this case . . . be set preferentially because an interpreter will be necessary and longer time will be needed."
This issue was initially raised in the trial court in the motion for new trial. In overruling that motion the trial judge found:
 "Well, the Court is going to rule that the motion is overruled on this basis: That the Defendant was here for the trial, he had his attorney, and I feel sure that he *Page 647 
was well aware of the indictment because the trial was held on December the 10th, began on December the 10th and the arraignment was September the 19th. And knowing Mr. Johnson and how conscientious he is, one of the most conscientious attorneys we have at the bar, he has represented both of these brothers in such an exemplary manner that I feel without any question that Mr. Johnson conveyed to him every aspect of the indictment. And I do think there is some question about it, but in view of the fact that Mr. Johnson was his attorney and that he had Mr. Williams with him conveying the information to him, I feel that he was unquestionably ready. And besides that, if he had not been ready Mr. Johnson would have notified the Court prior to the trial that he did not understand the indictment which had previously been presented to him on September the 9th."
We note that the defendant was arraigned and tried by different judges.
Alabama Code Section 12-21-131 (1975) authorizes the trial judge to furnish an interpreter to a party or witness. However, Section 12-21-133 places a duty on the handicapped person or his attorney to request an interpreter. It is undisputed that neither before nor at arraignment was an interpreter requested.
All the law contemplates is that the accused know and understand the nature of the accusation he is called upon to answer. Terry, 21 Ala. App. at 101, 105 So. 386. Where there is no request for an interpreter under Section 12-21-133, it is immaterial how this constitutional requirement is satisfied — so long as it is actually satisfied.
Although the appointment of an interpreter for the arraignment of a deaf-mute accused would have avoided the issue here presented and is certainly the recommended procedure, we find that the constitutional rights of the defendant were not violated in light of the factual findings of the two circuit court judges.
 II
The prosecutor's references to the race of the defendant were not made to arouse the racial sentiments of the jury. The comments that the defendant was "black" were made for the purposes of identification and to show apprehension on the part of the witness. Compare Blakely v. State, 344 So.2d 812
(Ala.Cr.App. 1977). We find no prejudicial racial motive or connotation in these remarks. Our finding is supported by the fact that there was no objection to these allegedly prejudicial comments.
 III
The sentence of fifteen years' imprisonment of the deaf-mute defendant does not constitute cruel and unusual punishment "because of the fact of deafness and lack of communication and awareness to his environment in general."
Unquestionably, the imprisonment of a deaf-mute may constitute a much harsher punishment than the imprisonment of a criminal who is not handicapped. However, the mere fact that a sentence is severe does not constitute cruel and unusual punishment. Rummel v. Estelle, 445 U.S. 263, 100 S.Ct. 1133,63 L.Ed.2d 382 (1980). In this case we do not find that the sentence of the deaf-mute defendant involves the unnecessary and wanton infliction of pain or that the sentence itself is grossly out of proportion to the severity of the offense. Greggv. Georgia, 428 U.S. 153, 173, 96 S.Ct. 2909, 2925,49 L.Ed.2d 859 (1976). Nor do we find that this sentence is cruel and unusual in that "it does not comport with human dignity."Furman v. Georgia, 408 U.S. 238, 270, 92 S.Ct. 2726, 2742,33 L.Ed.2d 346 (1972) (Brennan, J., concurring).
 IV
In view of the fact that the trial judge instructed the prospective jurors that "they are jurors for the court here and representing either party", we find no error in the prosecutor's references during voir dire to the veniremen as "my panel" and as "jurors for the State of Alabama." Although *Page 648 
the remarks may be criticized for being "not consonant with established practice in criminal cases", Scott v. State,56 Ala. App. 630, 632, 324 So.2d 343 (1975), they do not rise to the level of reversible error when considered within their proper context and in view of the trial judge's comments.
 V
The defendant was properly sentenced under the Habitual Felony Offender Act. Alabama Code Section 13A-5-9 (1975). The defendant had two prior convictions which were the result of guilty pleas.
These guilty pleas were not involuntary because the defendant was not represented by a "certified" interpreter. On both of these pleas the defendant was represented by an attorney who was an interpreter and who could communicate through sign language. Although Section 12-21-132 provides that the interpreter shall be furnished from a "roster of interpreters . . . being provided by and approved solely by the Alabama Association of the Deaf", there is no contention that the defendant requested an interpreter under that or any related section. Alabama Code Sections 12-21-131, 132, 133 (1975). Also, there is no contention that the defendant did not communicate with his attorney and understand the nature of the proceedings and charges involved in these two guilty pleas.
The second guilty plea was not involuntary because the defendant was not advised of Alabama Code Section 15-18-24 (1975). Repealed by Alabama's new Criminal Code, 1977 Ala. Acts 812, No. 607 (January 1, 1980), that section provided "(o)n a second conviction of the same offense . . . (a convict) must be sentenced to a longer term than before by at least one fourth of the former term, unless that exceeds the longest term prescribed by law." This section "does not enlarge the maximum or minimum punishment as fixed by law but enjoins on the trial judge within the limits prescribed as to each offense, a duty to be proportionately severe in exercising his discretion."Yates v. State, 245 Ala. 490, 491, 17 So.2d 777 (1944). Consequently, the failure to advise the defendant of Section 15-18-24 before accepting his second guilty plea did not amount to a failure to inform the accused of the minimum and maximum possible sentence for his offense and a violation of our holding in Miliner v. State, 414 So.2d 133 (Ala.Cr.App. 1981).
Even though the two convictions occurred before the effective date of the Habitual Felony Offender Act, they were properly considered in enhancing punishment. James v. State,405 So.2d 71, 74 (Ala.Cr.App. 1981).
With two prior felony convictions the defendant was properly sentenced under Section 13A-5-9 (Habitual Felony Offender Act) rather than Section 15-18-9. Alabama Code Section 15-18-9
(1975) provides the penalties for a criminal defendant who has been convicted of any felony and after such conviction has committed another felony. Section 15-18-9 is identical to subsection (a) of Section 13A-5-9. There is no conflict between the two sections. Sections 13A-5-9 (b) and (c) merely provide even greater enhanced punishments for third and fourth time felons. Even if these two statutes could somehow be construed as being inconsistent or in conflict, Section 13A-5-9, being the last expression of the will of the legislature, would control. United States v. Crittenden, 600 F.2d 478 (5th Cir. 1979) ("the last leap wins"); State v. Crenshaw, 287 Ala. 139,142, 249 So.2d 622 (1971).
 VI
The trial judge properly refused to charge the jury on criminal trespass in the first degree. Alabama Code Section13A-7-2 (1975). The evidence does not show that the defendant "entered or remained unlawfully" as defined in Section 13A-7-1
(4) and does show that the defendant was armed with a deadly weapon.
The defendant has received outstanding representation by his appointed counsel both at trial and on appeal. *Page 649 
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.