418 A.2d 357

COMMONWEALTH of Pennsylvania

v.

**James O. SEIBERT, Appellant.**

Superior Court of Pennsylvania.

Argued July 17, 1979.

Filed Jan. 4, 1980.

Petition for Allowance of Appeal Denied Sept. 11, 1980.

Justin K. McCarthy, Bethlehem, for appellant.

Richard Shiroff, Assistant District Attorney, Easton, for Commonwealth, appellee.

Before WIEAND, NIX and WEKSELMAN, JJ.*

NIX, Judge:

This is an appeal from the order of the Court of Common Pleas sitting en banc denying and dismissing appellant's motions for a new trial and the arrest of judgment. Appellant had been charged with criminal homicide in connection with the shooting death of his wife and was found guilty of murder of the third degree after a jury trial.

■ Appellant's first contentions is that the trial court committed reversible error when it refused appellant's motion to suppress the incriminatory statements made by him to the police. Appellant's evidence demonstrated that he had been drinking continuously for a period of six to seven hours prior to the death of his wife and his subsequent interrogation. Appellant contends that at the time he made these incriminatory statements he was too intoxicated to understand the constitutional warnings, and, therefore, did not knowingly and voluntarily waive his rights to remain silent and to have the assistance of counsel.

On the night of the homicide in question, a person who identified himself as appellant called the police station and informed the police switchboard operator that his wife had been shot and, "I did it—please forgive me." This statement was spontaneous and was uttered before the police had any chance to warn the speaker against making any inculpa-

* Justice Robert N. C. Nix, Jr., of the Supreme Court of Pennsylvania, and Judge I. Martin Wekselman, of the Court of Common Pleas of Allegheny County, Pennsylvania, are sitting by designation.

tory statement. Later that night, after appellant was arrested and taken into custody, he was given the *Miranda*[1] warnings. The appellant nodded his head in response to the series of questions put to him and did not give an express verbal response to the questions. Following these warnings, the appellant gave a written and signed inculpatory statement.

One police officer who was present during the arrest and another police officer present during the questioning of appellant testified at the suppression hearing and at trial that, although it was evident that the appellant had consumed alcohol, both police officers believed that the appellant was not so intoxicated as to have rendered him incapable of understanding the warnings and the situation that he faced. A test administered by the police at the scene of the crime demonstrated the appellant's blood alcohol level was .13.[2] Appellant's testimony relating to his alcoholic consumption indicated that he had consumed between twenty-four (24) and thirty-six (36), seven (7) ounce bottles of beer during a six (6) to seven (7) hour period preceding the shooting. His testimony also established that he had ceased drinking approximately three to four hours before the time of the killing. Moreover, on direct examination, appellant stated, "Well, I was drinking, but I could drive my car." It is also apparent from the record that appellant was able to relate the sequence of events surrounding his arrest and interrogation. He concedes remembering that his rights were in fact given to him. He acknowledged that he experienced no difficulty in understanding the questions put to him by the police following his arrest.

Our standard of review of an issue of this nature has been clearly set forth in the opinions of the Supreme Court:

1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

2. A later laboratory test showed a level of .42, but the Commonwealth expert testified that this reading must have been due to a faulty test because a person with a level of .42 is either comatose or dead.

On appeal from denial of a suppression motion, this Court must consider only the evidence presented by the Commonwealth and so much of the evidence for the defense as, fairly read in the context of the record as a whole, remains uncontradicted. E. g., *Commonwealth v. Hughes*, 477 Pa. 180, 383 A.2d 882 (1978); *Commonwealth v. Brown*, 473 Pa. 562, 375 A.2d 1260 (1977); *Commonwealth v. Goodwin*, 460 Pa. 516, 333 A.2d 892 (1975). Where the suppression court's findings have ample support in the record, they may not be disturbed on appeal. *Commonwealth v. Hughes, supra; Commonwealth v. Bundy*, 458 Pa. 240, 328 A.2d 517 (1974); *Commonwealth v. Stafford*, 451 Pa. 95, 301 A.2d 600 (1973).

*Commonwealth v. O'Bryant*, 479 Pa. 534, 537, 388 A.2d 1059, 1061 (1978).

With regard to the effects of intoxication on the voluntariness of an inculpatory statement, the Supreme Court, *Commonwealth v. Smith*, 447 Pa. 457, 291 A.2d 103 has set forth the following standard:

The fact that an accused has been drinking does not automatically invalidate his subsequent incriminating statements. The test is whether he had sufficient mental capacity at the time of giving his statement to know what he was saying and to have voluntarily intended to say it. Recent imbibing or the existence of a hangover does not make his confession inadmissible, but goes only to the weight to be accorded to it. *See United States v. Martin*, 434 F.2d 275 (5th Cir. 1970); *United States v. Kershner*, 432 F.2d 1066 (5th Cir. 1970); 2 Wharton's Criminal Law (12th Ed.) § 388 (Cum. Supp. 1970).

*Cf. Commonwealth v. Cornish*, 471 Pa. 256, 268, 291 A.2d 103, 104 (1977) (as with consumption of alcohol, drug intake does not automatically invalidate an incriminatory statement).

Appellant's next contention is that the suppression court erred when it refused to suppress two statements made by the appellant's four-year-old son, one statement made some twenty minutes after the beginning of the police investiga-

tion at the scene of the crime, and the same statement repeated to investigating officers two months later. These statements were not introduced at trial, thus this contention is frivolous.

Appellant's next contention is that the trial court erred by admitting into evidence over defense objection the results of a flameless atomic absorption spectrometry test. At the outset, it must be understood that appellant does not challenge the scientific veracity or reliability of this test. The purpose of the test was to determine whether the subject recently fired a weapon by conducting a chemical test on the hands of the subject. In this case the hands of the victim and appellant were examined. The expert testified at trial that the test results indicated that appellant had fired a weapon, and that the decedent had not fired a weapon.

Appellant's complaint is that he was not informed until the time of trial that the test had been conducted and that the results were to be offered into evidence, and was thereby prevented from developing evidence to rebut the results of the test. Appellant also argues that one of the after-effects of this test was the destruction of certain cells in the hands of the subject, which meant that the test could be administered only once effectively on an individual with reference to a single firing of a weapon. Appellant argues that this cell-destructive feature of the test prevented him from conducting a similar test with the possibility of reaching contrary results to rebut those obtained and introduced by the Commonwealth.

This issue is governed by former Pa.R.Crim.P. 310 which required a request for discovery of evidence sought by the defendant pre-trial. *See Commonwealth v. Gockley*, 411 Pa. 437, 192 A.2d 693 (1963). Appellant made no such pre-trial request. The Commonwealth was under no order or duty to disclose this evidence prior to trial. Thus this contention is also without merit.

■ Appellant's next contention is that the trial court erred in its instruction to the jury on the elements of voluntary manslaughter. Specifically, appellant contends that the trial court omitted to instruct the jury that a specific intent is an element of voluntary manslaughter. A reading of the court's charge indicates that the trial court did not exclude the element of specific intent from the definition of voluntary manslaughter. To the contrary, the court defined "murder" in terms of the requisite specific intent and distinguished voluntary manslaughter solely on the basis of the existence of provocation and passion. The element of intent was never eliminated or presented to the jury as a point distinguishing murder from manslaughter. The trial court stated: "Therefore, to reduce an intentional wounding resulting in death to voluntary manslaughter, there must be sufficient cause of serious provocation." We therefore must reject this argument of appellant.

■ Appellant's next contention is the sufficiency of the evidence to support the verdict. The standard of review is to accept as true all the facts and all reasonable inferences therefrom which the fact finder properly could have considered in determining whether the evidence was sufficient to prove beyond a reasonable doubt that the appellant is guilty of the crime for which he was charged. *See e. g. Commonwealth v. Hamm,* 474 Pa. 487, 378 A.2d 1219 (1977); *Commonwealth v. Toney,* 474 Pa. 243, 378 A.2d 310 (1977). Appellant was present at the time and place of the crime and admitted to "causing" his wife's death. A medical expert witness for the Commonwealth testified that the nature of the wound indicated that it could not have been self-inflicted by the decedent, because the wound indicated that the gun had been fired from a distance which was too far away from the head of the decedent for a person of decedent's stature to have pulled the trigger. The results of the flameless atomic absorption spectrometry test indicated that appellant had recently fired a gun and that the decedent had not. Finally, an intention to cause serious bodily harm could properly be inferred from the fact that a deadly weapon had been used to inflict a wound upon a vital part of

the decedent's body. *See e. g. Commonwealth v. Comer Glass*, 486 Pa. 334, 405 A.2d 1236 (1979); *Commonwealth v. O'Searo*, 466 Pa. 224, 352 A.2d 30 (1976); *Commonwealth v. Drum*, 58 Pa. 9 (1868). There was clearly sufficient evidence in the record to support appellant's conviction of third degree murder.

■ Appellant's next contention is that the trial court erred when it failed to charge the jury on the elements of involuntary manslaughter. The trial of this case occurred after the date of the new Crimes Code, but prior to the holdings of the Supreme Court of Pennsylvania in *Commonwealth v. Polimeni*, 474 Pa. 430, 378 A.2d 1189 (1977) and *Commonwealth v. Garcia*, 474 Pa. 449, 378 A.2d 1199 (1977). Appellant concedes that no request for such an instruction was ever made; however, appellant argues that it would be unfair to hold that trial counsel waived this issue prior to the holdings in *Polimeni* and *Garcia*.

The Supreme Court has held that the decisions in *Polimeni* and *Garcia* were merely interpretive of the changes in the law wrought by the Crimes Code and that it was error for a trial court to refuse to give a *requested* instruction, although the request for such an instruction was made in a trial *prior* to the holdings in *Polimeni* and *Garcia*. *See Commonwealth v. Warin*, 484 Pa. 555, 558 n.2, 400 A.2d 588, 589 n.2 (1979); *Commonwealth v. Dussinger*, 478 Pa. 182, 195, 386 A.2d 500, 506 (1978). Since the charge in this case is covered by the 1972 Crimes Code, counsel's failure to request an instruction on involuntary manslaughter waived that issue on appeal. *Cf., Commonwealth v. Diventura*, 270 Pa.Super. 471, 411 A.2d 815 (1979) (trial counsel was ineffective for failing to request jury instruction on involuntary manslaughter where trial occurred before Supreme Court decisions in *Polimeni* and *Garcia*, because those cases merely interpreted the new Crimes Code which was in effect at the time of the crime and trial counsel lacked any reasonable basis designed to effectuate his client's interests in failing to request such an instruction).

■ Appellant's last contention is that he is entitled to a new trial on the basis of after-discovered evidence. This

contention is without merit. Appellant alleges that he has in his possession recently discovered photographs of two bullet holes in the floor of the kitchen and basement rooms of appellant's home. Appellant, in his direct testimony at trial, alleged that he had fired two shots into the floor of the kitchen. The testimony of the Commonwealth witnesses contradicted appellant's claim. Two police officers testified that a diligent search of appellant's home failed to reveal the existence of the alleged bullet holes.

■ This testimony was simply a matter going toward the credibility of a witness. After-discovered evidence which is solely probative of credibility is never a sufficient ground upon which to premise the grant of a new trial. *See e. g. Commonwealth v. Coleman,* 438 Pa. 373, 264 A.2d 649 (1970). Secondly, this is the type of evidence that, had it existed, could have been discovered prior to trial with reasonable diligence. As such, it cannot be thought of as "after-discovered evidence" so as to justify the award of a new trial. *See Commonwealth v. Rambo,* 250 Pa.Super. 314, 326, 378 A.2d 953, 959 (1977).

Judgment of sentence affirmed.