## Commonwealth v. Martin

*Ernest Preate, District Attorney*, for the Commonwealth.

*Jan Kuha* and *John J. Cerra*, for defendant.

GATES, *P.J.*, December 30, 1981—On January 18, 1980, a jury found defendant, James R. Martin, guilty of murder in the third degree, criminal con-

spiracy, soliciting suicide, and obstruction of administration of law or other governmental function. The charges were brought as a result of the February 6, 1979, hanging death of Clifford Doolittle while both men were incarcerated in the Lackawanna County Prison. The matter was brought to Lebanon County on change of venue. Post-verdict motions in arrest of judgment and for a new trial were timely filed on January 24, 1980.

Defendant raises three issues for our consideration, to wit: (1) whether there has been a violation of Pa.R.Crim.P. 1100 which would require dismissal of charges against defendant; (2) whether defendant's claimed "new evidence" would require a new trial; and (3) whether allegedly improper remarks by the district attorney require that a new trial be granted.

I

Rule 1100 requires a criminal action to be brought within 180 days of a written complaint. If trial cannot be commenced within the 180 day period, the court may grant an extension upon application and a showing of due diligence by the Commonwealth. Otherwise, the charges must be dismissed.

Defendant contends that the Commonwealth violated Rule 1100 and charges against him must be dismissed. Judge James M. Munley of Lackawanna County, by order date November 16, 1979, found no violation of the rule and denied defendant's motions to quash the indictment and dismiss charges against him. We cannot now presume to overrule the order of a court of equal jurisdiction where, as here, there is no new or different evidence to consider. United States v. Wheeler, 256

F. 2d 745, 746 (1958); Commonwealth v. Brown, 485 Pa. 368, 402 A. 2d 1007 (1979); Commonwealth v. Griffin, 257 Pa. Super. 153, 390 A. 2d 758 (1978).

"[I]f the second judge has as much chance of being in error on the merits as has the first judge in considering the same question, we fail to see why the fortuity (if it can be called that) of the second judge being right in the eyes of the appellate court should affect the rule designed to prevent shopping about for a judge more favorably disposed to whom a petition for reconsideration may be presented." United States v. Wheeler, 256 F. 2d 745, 749 (1958).

Consequently, we refuse to dismiss the charges based on defendant's Rule 1100 violation contention.

## II

Next defendant argues that he is entitled to a new trial based upon "after discovered" evidence.

Before we reached oral argument on defendant's original post-trial motions he filed a petition for a rule to show cause why a new trial should not be granted on the basis of after discovered evidence. On November 1, 1980 we issued the rule.

The rule was answered by the Commonwealth's attorney on November 28, 1980. On August 10, 1981 we held an en banc hearing on defendant's petition.

The first prong of this so-called "after discovered evidence" was an allegation that a plea agreement concerning one of the Commonwealth's witnesses, Douglas Palmiter was not disclosed to defense counsel prior to trial. However, at the hearing it

was proven that on March 21, 1979 the district attorney wrote to the public defender's office outlining the proposed plea agreement. The proposed plea agreement was to be a six months sentence to the Lackawanna County Jail. However, the sentencing judge apparently did not accept the plea bargain; Palmiter was in fact sentenced to one and one-half to four years on a burglary charge. Palmiter filed a petition for reconsideration of sentence which was refused. All of this information was available to this defendant's investigator since he interviewed Palmiter several months afterwards on two occasions in the Lackawanna County Jail.

Notwithstanding, defendant was afforded full opportunity to cross-examine Palmiter at the trial on all matters relating to his credibility. "After-discovered evidence which is solely probative of credibility is never a sufficient ground upon which to premise the grant of a new trial." Commonwealth v. Seibert, 274 Pa. Super. 184, 192, 418 A. 2d 357, 361 (1980).

The next prong is based on a letter that a Commonwealth witness Kenneth Benjamin wrote to Attorney Dunn, a Public Defendant in Lackawanna County. Benjamin at the time was in the State Correctional Institution at Camp Hill. The gist of the letter is that he lied at the Martin trial. However, on cross-examination at the hearing before us he testified that the letter he wrote to Mr. Dunn was false and that he had testified truthfully at Martin's trial. He gave as a reason for writing the letter that he was in solitary confinement at Camp Hill and that by writing this letter he would probably get a "break" and be moved to another jail. Considering Benjamin's testimony at the hearing before us as a whole, we do not find that it is a recantation of his testimony at the Martin trial.

The next witness was a Commonwealth witness at the Martin trial, Kevin Rought. He testified that before and during the course of the Martin trial he and other witnesses were interviewed in a motel room by the district attorney and the police. During these interviews the witnesses were drinking beer. Further that the witnesses were to be paid $5,000. However, on cross-examination Rought testified that what he said at the Martin trial was true and accurate. Typical of the cross-examination is as follows:

"Q. And I'm asking you, is that is your testimony accurate and true, your trial testimony accurate and true. You don't want to change any of that?

"A No.

"Q Now, the money you supposedly mentioned here to defense counsel, mentioned that you received; isn't that the witness fee; you get five dollars?

"A Yes."

(August 10, 1981 hearing at page 130).

On reviewing the testimony of Rought at the hearing before us we cannot characterize it as recantation testimony or after discovered evidence.

Time and again our appellate courts have noted the worthlessness of recantation testimony. Even if we were to have found some of the testimony at the hearing before us on August 10, 1981 to be of a recantation nature, we would find it incredible. In Commonwealth v. Nelson, 484 Pa. 11, 398 A. 2d 636 (1979) the Pennsylvania Supreme Court stated:

"Recantation testimony is considered extremely unreliable. The trial court is to deny a new trial unless satisfied that the recantation is true and an appellate court is not to disturb the decision unless

there is clear abuse of discretion. Commonwealth v. Coleman, 438 Pa. 373, 264 A. 2d 649 (1970). It is up to the trial court to judge the credibility of the recantation. Commonwealth v. Sanabria, 478 Pa. 22, 384 A. 2d 1292 (1978 . . . "

See also Commonwealth v. Starks, 484 Pa. 399, 399 A. 2d 353 (1979). In short what we heard at the hearing on defendant's petition for a new trial based on after discovered evidence is not worthy of the award of a new trial.

## III

We do find merit in defendant's third contention.

Basic to our system of the administration of justice is the concept of impartiality. In this pursuit we have restrained the Commonwealth's power to obtain guilty verdicts by requiring that the jury be impartial and unswayed by emotion. We do not permit the Commonwealth to obtain a verdict in its favor by appealing to a jury's attributes other than those of reason and perception. This is all the more true because of the quasi-judicial role of the popularly elected district attorney and likelihood that the jury will trust him and what he says believing, in its innocence, that he will always fulfill his role within permissible bounds. It has been said that as our representative in the criminal court proceedings, the District Attorney seeks no victims, only justice.

We allow that a prosecutor may strongly believe that the evidence clearly indicates the accused's guilt, but we permit him only to argue fair deductions and appropriate inferences from the evidence presented at the trial.

Time and again we have cautioned prosecutors not to appeal to a jury's emotions nor to distract

them from other than objectively evaluating the testimony presented in the case in a sober and reflective frame of mind so as to produce a judgment warranted by the evidence and not inspired by emotion or passion. Commonwealth v. Gilman, 470 Pa. 179, 368 A. 2d 253 (1977); Commonwealth v. Harvell, 485 Pa. at 411, 327 A. 2d at 30 (1979).

With the foregoing firmly in mind we turn now to the case at bar, which is, as we have noted, a prosecution for murder. During an impassioned closing argument to the jury, the prosecutor made improper and prejudicial remarks which will require us to grant defendant a new trial.

Defendant first moved for a mistrial immediately upon the prosecutor's comment, "The con-man was becoming conned by the man who was convicted already of murder, Nicholas Karabin, the man—." The motion was denied, exceptions taken, and curative instructions attempted.

Karabin had been convicted of murder and was in the Lackawanna County Jail for that offense at the time of Doolittle's death. Karabin had been a public school teacher and that case, as well as the Doolittle case, generated widespread publicity. As a result, Karabin was tried in neighboring Dauphin County on a change of venue a few months before the Martin trial. He was convicted of murder one and the jury imposed the death penalty in the Doolittle case. This case also received considerable publicity in this area so the trial judge wisely sought to minimize Karabin's identity. Thus, "guilt by association" was of vital concern to counsel for the defense as well as the court.

Upon review of the record we have reconsidered our ruling and find our instructions to the jury inadequate assurance that defendant received a fair

trial. This is particularly true in light of subsequent comments by the district attorney in his closing argument.

The characterization of Karabin as " . . . the man who was convicted already of murder . . . "[1] was blatantly prejudicial. There was no mention in the record that Karabin had been convicted of the murder of Doolittle or anyone else. At trial, we did not consider the possibility that the jury may have believed the comment to be a reference to Doolittle's death. The jury was instructed only that "there was no testimony" as to why Nicholas Karabin was in the Lackawanna County Jail on the occasion of this February 6 incident. For this reason, we now feel our instructions may have been less than sufficient and that adequate curative instructions were not possible without making matters worse.

Even assuming the only interpretation of the comment was that to which the curative instructions were addressed, the district attorney's subsequent comments are sufficient basis for granting defendant a new trial.

The American Bar Association and a long line of Pennsylvania case law prohibit a prosecutor from making statements not based upon facts in evidence and reasonable inferences therefrom. Commonwealth v. Toney, 474 Pa. 243, 378 A. 2d 210 (1977); Commonwealth v. Adkins, 468 Pa. 465, 364 A. 2d 287 (1976); Commonwealth v. Anderson, 490 Pa. 225, 415 A. 2d 887 (1980); Commonwealth v. Barren, 273 Pa. Super. 492, 417 A. 2d 1156 (1980); Commonwealth v. Shain, 493 Pa. 360, 426 A. 2d 589 (1981). Unfortunately, it appears the prose-

---

1. Reference to a non-testifying accomplice's prior conviction would be inadmissible evidence as a violation of the relevancy rule.

cutor here was unaware of the standards governing his office at the time this matter was tried.

Convictions are to be based only upon properly admitted evidence, not emotion, sympathy for the victim or the victim's family, or any other issue not bearing directly upon defendant's guilt or innocence. Commonwealth v. Watts, 488 Pa. 214, 412 A. 2d 474 (1980); Commonwealth v. Hamilton, 274 Pa. Super. 350, 418 A. 2d 442 (1980); Commonwealth v. Mayberry, 479 Pa. 23, 387 A. 2d 815 (1978); Commonwealth v. Maloney, 469 Pa. 342, 365 A. 2d 1237 (1976); Commonwealth v. Cherry, 474 Pa. 295, 378 A. 2d 800 (1977). The prosecutor did not confine himself to the merits of the Commonwealth's case. He clouded the issue of guilt versus innocence in his closing statement with remarks like:

" . . . That perversion of justice that took place at the Lackawanna County Jail must be recognized and stopped if we are going to preserve the honor of system of justice, then every prisoner, every person that walks the street must be given that kind of protection that the law permits, and it's nobody's business outside of this courtroom to take the law into their own hands and justice in their own hands. But Nicholas Karabin wore this robe, mocking the very robe of judicial justice, and Nicholas Karabin stood and James Martin stood there, playing the role as the prosecutor of the case, mocking the dignity of the offices. . . . "

" . . . The integrity of the judicial system and administration of justice, it must be protected and preserved, because if it happens to at least one of us, it can happen to every one of us. . . . "

"By your verdict, show that man, show the people who worked on this case, that they are not the real

criminals in this case. Come back with a conviction of first degree murder, because that's what it will mean."

" . . . This case is about one thing, and that is justice. That is what this case is all about . . . because unless we protect everybody in our prison and on our streets to the best we possible can, there is no justice. But justice here is what is on trial in this courtroom. The integrity of the judicial system. . . . "[2]

In Maloney, supra, the prosecutor stated it was "inconceivable" to him that the jury would find defendant not guilty. He continued, saying, " . . . If it should happen, I just don't know. I'd probably lose faith in the judicial system." The Pennsylvania Supreme Court found these comments sufficient to require a new trial. The prosecutor's comments in the case at bar were equally as improper, if not more so.

Although it is also improper to comment on the truth or veracity of the Commonwealth's witnesses (Commonwealth v. Grant, 479 Pa. 74, 387 A.2d 841 (1978)) or the lack of truth or veracity of the defendant's witnesses (Commonwealth v. Bullock, 284 Pa. Super. 601, 426 A.2d 657 (1981)), the District Attorney liberally sprinkled his closing argument with such innuendos.[3]

At the close of the prosecutor's statement, defense counsel noted objections to the characterization of their witnesses as liars, mention of facts not in the record, inflammatory references to perversions of justice, and expressions of the district attorney's own personal beliefs. Since the closing arguments were recorded in their entirety and the

2. Justice was not on trial; James Martin was.
3. See particularly N.T. 1455 and 1473.

objections were made prior to the jury charge, we find defendant's objections to have been timely made. Commonwealth v. Adkins, 468 Pa. 465, 364 A. 2d 287 (1976); Commonwealth v. Leymeister, 494 Pa. Super. 15, 428 A. 2d 176 (1981).

Having found impermissible remarks to have been made and objections thereto to have been preserved, the only remaining question is whether the error was harmless or not. It is within the sound discretion of the trial court to determine whether or not improper remarks constitute prejudice to defendant. Commonwealth v. Simon, 423 Pa. 386, 248 A. 2d 289 (1968); Commonwealth v. Garcia, 478 Pa. 406, 387 A. 2d 46 (1978).

The United States Supreme Court in Berger v. United States, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935), held defendant was entitled to have his conviction set aside where evidence of guilt was not overwhelming and the prosecutor's behavior was highly prejudicial, pronounced and persistent. This standard was revised by Chapman v. California, 386 U.S. 18, 17 L.Ed. 2d 705 (1967). To find harmless federal constitutional error "the Court must be able to declare a belief that it was harmless beyond a reasonable doubt." 386 U.S. at 24, 17 L.Ed. 2d at 711.

Pennsylvania's Supreme Court adopted a similar test for harmless error in Commonwealth v. Story, 476 Pa. 391, 383 A. 2d 155 (1978). There the court said, "We adopt the standard that an error cannot be held harmless unless the appellate court determines that the error could not have contributed to the verdict." 476 Pa. at 409, 383 A. 2d at 164. The court went on to say, "[I]n deciding whether an error is harmless because there is properly admitted overwhelming evidence of guilt, the untainted

evidence relied upon must be uncontradicted." 383 A. 2d at 166.

Because of the prejudicial, pronounced and persistent nature of the district attorney's remarks, we cannot find, beyond a reasonable doubt, that those improper remarks could not have contributed to the verdict. Neither can we find the error harmless based upon overwhelming evidence of guilt. Little of the Commonwealth's evidence is uncontradicted. In fact, the only evidence not disputed at trial is: (1) Clifford Doolittle died unwitnessed (2) by hanging (3) from the window bars of his cell (4) by a rope made of sheets (5) In the Lackawanna County Prison (6) on February 6, 1979, (7) and James Martin reported the incident (8) to a guard. The only other uncontradicted fact is that the cell block floor was scrubbed that day. This is certainly not sufficient to support defendant's conviction.

Although we find the district attorney's comments highly improper, unwarranted, and the basis for granting James R. Martin a new trial, we do not find those comments to have been made in bad faith. Nor do we find that the remarks were made intentionally to force the accused to move for mistrial, thereby affording the Commonwealth another, possibly more favorable, opportunity to convict. The Commonwealth's evidence, if believed by the jury, was sufficient to convict the defendant of first degree murder. The prosecutor was apparently upset by the defendant's testimony accusing the prosecution team of misconduct. At most the impassioned nature of the closing remarks was "over reaction" rather than intentional. Cf. Commonwealth v. Mitchell, 488 Pa. 75, 410 A.2d 1232 (1980). We do,

190

however, caution District Attorneys that such comments will not be tolerated in the future.[4]

### ORDER OF COURT

And now, December 30, 1981, for reasons set forth in the accompanying opinion, defendant's post-trial motion for new trial is granted. The trial shall commence within 120 days of this order. Defendant's motion in arrest of judgment is denied.

---

4. On February 27, 1974 the Supreme Court of Pennsylvania adopted a Code of Professional Responsibility. We direct counsel's attention particularly to D.R.-106—Trial Conduct. See also ABA Project on Minimum Standards for Criminal Justice, Prosecution Function §1.1 and 5.8. It is regrettable to visit the expense of a new trial on the citizens of Lackawanna County. But we must never forget that justice is priceless.