STATE of Maine

v.

**Wayne Leroy DOUCETTE.**

Supreme Judicial Court of Maine.

Nov. 28, 1978.

Henry N. Berry, III, Dist. Atty., Peter G. Ballou, Deputy Dist. Atty., Portland, Glenn Robinson, Law Student (orally), for plaintiff.

Ellsworth T. Rundlett, III, Portland (orally), Michael J. LaTorre, Portland, for defendant.

Before McKUSICK, C. J., and POMEROY, WERNICK, DELAHANTY, GODFREY and NICHOLS, JJ.

DELAHANTY, Justice.

After a jury trial in Superior Court, Cumberland County, the defendant was convicted of forcibly raping a deaf seventeen-year-old female and was sentenced to a term of twelve years in Maine State Prison. 17–A M.R.S.A. § 252(1)(B)(1). On appeal, Doucette alleges four principal assignments of error:

I) the presiding Justice's summary rejection of the defendant's mid-trial offer to change his plea to guilty;

II) the appointment of an interpreter who, the defendant claims, was biased against him;

III) the failure to supply the defendant with his own interpreter; and

IV) the denial of the defendant's motion for acquittal on the ground of insufficiency of the evidence.

We deny the appeal.

The clear and candid testimony at the defendant's trial, taken in the light most favorable to the jury's verdict, *State v. Young*, Me., 390 A.2d 1056 (1978); *State v. Blier*, Me., 371 A.2d 1091, 1092 (1977), may be summarized as follows: The prosecutrix and her fifteen-year-old sister were walking home along Main Street in Westbrook when for the first time they encountered the twenty-year-old defendant and his companion, Arthur Gallant. After a brief chat with the victim's sister, Gallant suggested that they smoke a marihuana cigarette. The young women acquiesced, and they all began walking toward a wooded area nearby. Finding a suitably secluded spot some distance from the street, the foursome shared the "joint," each taking two or three puffs. That done, they paired off for the walk back to the street. The sister and Gallant were in front; the prosecutrix and the defendant were in the rear. After a short while, the sister noticed that the defendant and the prosecutrix were no longer behind her. Growing increasingly concerned, she rejected Gallant's amorous advances and insisted that they return to the woods to locate the missing couple.

Meanwhile, the defendant and the prosecutrix had made their way to a different spot in the woods. There, the defendant began kissing and fondling the prosecutrix and, after a while, succeeded in removing her pants and undergarments. The prosecutrix struggled and protested with increasing fervor as the defendant became more forceful and more intimate. Her strength proved insufficient, however, and the defendant eventually succeeded in penetrating her with his penis. At this, she cried out, making a noise that "sounded like a scream."

Running in the direction of the "scream," the sister at last discovered the prosecutrix naked from the waist down lying on her back with the defendant, in a similar state of undress, face-to-face on top of the victim. The sister yelled at the defendant to get off and, when he ignored her, began hitting him. Finally, the defendant stood up, pulled up his pants, and walked off.

The defendant, who took the stand to explain his version of the events, claimed

that he and the prosecutrix had exchanged kisses, that she then led him to a spot in the woods where she removed her own pants, that with her acquiescence he had penetrated her vagina with his finger, and that he had not penetrated her with his penis when the sister interrupted them.

A medical examination, which took place soon after the event, revealed that the victim's hymen had been partially ruptured.

## I

At trial, the first witness to testify was the sister, who was followed to the stand by the prosecutrix. After the prosecutrix had given her direct testimony, but before she had been cross-examined, the defendant expressed a desire to change his plea from "not guilty" to "guilty." Accordingly, the presiding Justice, out of the hearing of the jury, began to question the defendant pursuant to M.R.Crim.P. 11 in an attempt to establish whether the defendant in fact committed the crime charged and whether defendant's plea was voluntarily entered. A portion of the inquiry produced the following colloquy:

> THE COURT: Do you have any questions about what the crime means?
>
> THE DEFENDANT: I just don't think I had a fair trial.
>
> THE COURT: What do you mean?
>
> THE DEFENDANT: My lawyer tells me that if I come up here and plead guilty I can get four or five years. He tells me if I stand here and fight it, I'll go to Thomaston and get up to twenty years. You don't give me a chance.

With little ado, the court tersely announced:

> Bring the Jury back, strike the Defendant's guilty plea from the record and we'll continue with this trial.

With that, the jury returned to the courtroom and the cross-examination of the prosecutrix began. Neither the defendant nor his counsel made any objection to the presiding Justice's refusal to accept the guilty plea.

■ As the defendant concedes, accused individuals have no absolute right to have their guilty pleas accepted. *State v. Fernald*, Me., 248 A.2d 754, 760 (1968). Although the rule governing plea-taking procedures, M.R.Crim.P. 11, has been amended since *Fernald* was decided, it continues to provide that "[t]he court may refuse to accept a plea of guilty . . . ." Rule 11 also authorizes the trial court to reject any plea agreement entered into by the defendant and the prosecutor. Our holding in *Fernald* remains sound and controlling: "[Guilty] pleas may be allowed only with the Court's approval and after the Court has made such inquiry as satisfies it that the defendant in fact committed the crime charged and has determined that the plea is voluntary." *Fernald, supra* at 760. *Cf. Morgan v. State*, Me., 287 A.2d 592, 604 n.6 (1972).[1]

The defendant's position is that the presiding Justice committed reversible error by rejecting the plea "without further inquiry and without establishing a clear record supporting the rejection of [the] guilty plea." The defendant also assigns as error the Justice's failure to articulate his reasons for denying the plea.

■ We find these contentions to be unfounded. Rule 11 mandates that the presiding Justice who elects to *accept* a guilty plea must establish a sound record indicating that the defendant's plea is voluntary. The rule fails, however, to impose a similar duty when the plea is rejected.[2] In that

---

1. The defendant also concedes, as he must, that there is no federal constitutional right to have one's guilty plea accepted. *Santobello v. New York*, 404 U.S. 257, 262, 92 S.Ct. 495, 498, 30 L.Ed.2d 427, 433 (1971); *North Carolina v. Alford*, 400 U.S. 25, 38 n.11, 91 S.Ct. 160, 168 n.11, 27 L.Ed.2d 162, 172 (1970); *United States v. Jackson*, 390 U.S. 570, 584, 88 S.Ct. 1209, 1217, 20 L.Ed.2d 138, 148 (1968); *Lynch v. Overholser*, 369 U.S. 705, 719, 82 S.Ct. 1063, 1072, 8 L.Ed.2d 211, 220 (1962).

2. The pertinent portion of Rule 11 reads as follows:

> The court may refuse to accept a plea of guilty, and shall not accept such plea . . . without first (a) making such inquiry as may satisfy it that the defendant in fact committed the crime charged, and, (b) addressing the defendant personally and determining that the plea is made voluntarily with understanding of the nature of the charge.

situation, the primary responsibility for raising pertinent issues and for developing a meaningful record rests with the litigant and not with the court. *Cf. State v. Carney*, Me., 390 A.2d 521 (1978). The record in the case at bar is barren of any objection to the presiding Justice's rejection of the plea. There was no request to continue the inquiry, no request to have the reasons for rejecting the plea set forth, and no request for an opportunity to explain the defendant's remarks. The issue urged here on appeal was not presented to the trial court and therefore cannot form the basis for reversal unless the alleged error manifestly deprived the defendant of a fair proceeding. *State v. Pomerleau*, Me., 363 A.2d 692 (1976).

■■ After reviewing the record of the abortive plea taking, we find that the reasons underlying the presiding Justice's decision to reject the plea were obvious beyond articulation. The defendant himself concedes in his brief that his "conduct and remarks . . . at the time of the tender of the plea of guilty were indeed the result of dispair [sic], hopelessness, and lack of understanding . . .." *See State v. Fernald, supra* at 760; H. Glassman, 3 Maine Practice § 11.1 (1967). The defendant's statements clearly revealed that his decision to plead guilty was motivated, and thus, within the meaning and intent of Rule 11, infected, by his erroneous belief that he was not being accorded a fair trial. Although we consider it the better practice for a judge who rejects a guilty plea to make known his reasons for doing so, we find no manifest error in the presiding Justice's failure in this case either to continue the plea-taking proceeding or to articulate his reasons for rejecting the plea.

## II

Before any testimony was taken, the presiding Justice held an on-the-record discussion with prosecution and defense counsel regarding the qualifications of Eva Cutler to serve as a court-appointed interpreter for the prosecutrix. Defense counsel then stated that he was satisfied with her qualifications.[3] When it came time for the prosecutrix to testify, the presiding Justice questioned Cutler at length concerning her background and qualifications. She testified that she has worked at the Baxter School for the Deaf for thirteen years, that she interprets for hearing-impaired people on a daily basis, and that she understood her function as a court interpreter: "That I am to repeat exactly what the witness says." It also developed that she had acted as an interpreter when the prosecutrix was taken to the hospital and again when she testified before the Grand Jury. As before, defense counsel entered no objection to Cutler's appointment.

On appeal, the defendant argues that the presiding Justice violated M.R.Crim.P. 28 by appointing an "interested interpreter." Cutler's interest in the outcome of the case is said to stem from her position at the Baxter School and from her having assisted the prosecutrix on two prior occasions. The defendant also argues that the interpreter's occasional practice of referring to the prosecutrix in the third person (i. e., "she stood up",) rather than repeating her testimony in the first person (i. e., "I stood up",) made a fair trial impossible.

3. During the conference, the presiding Justice made it plain that he would conduct a thorough examination of the proposed interpreter unless defense counsel was "satisfied to the point that [he] recognized her ability and her qualifications . . .." When it was revealed that Cutler had served as interpreter when the prosecutrix appeared before the Grand Jury, the following exchange took place:

[DEFENSE COUNSEL]: . . . [O]kay, I'll waive that.

THE COURT: You're not going to waive anything, all I want to know is are you satisfied with the qualifications of the proposed interpreter who[m] .the State is going to offer to interpret the alleged victim's testimony?
[DEFENSE COUNSEL]: Yes.
THE COURT: Fine.
The record shows that despite defense counsel's stipulation the presiding Justice nevertheless conducted a careful examination of the interpreter before she began her duties.

The issues now presented were never raised below and accordingly must be evaluated from a "manifest error-serious injustice" standpoint. *State v. Pomerleau, supra.* On this record, we find the allegation of bias on Cutler's part to rest on extremely dubious grounds and therefore reject it. Furthermore, the interpreter's occasional lapses from first to third person did not deprive the defendant of a fair trial. *See United States v. Guerra*, 334 F.2d 138, 142–43 (2d Cir.), *cert. denied*, 379 U.S. 936, 85 S.Ct. 337, 13 L.Ed.2d 346 (1964).

### III

The defendant argues that the presiding Justice should have appointed a second interpreter to assist the defendant in evaluating the prosecutrix's testimony and to assure an accurate translation. His failure to do so is alleged to be a violation of the Confrontation Clause of the sixth amendment. Again, the issue was not properly preserved for appeal: the defendant not only failed to request another interpreter but also agreed that Cutler was qualified.

We find that the defendant's right to confront the prosecutrix was adequately protected by the court's appointment of a qualified interpreter. The cases cited by the defendant are inapposite. *Terry v. State*, 21 Ala.App. 100, 105 So. 386 (1925), held that an indigent deaf-mute charged with murder was entitled to the assistance of a court-appointed interpreter. The Second Circuit came to a similar conclusion in *United States ex rel. Negron v. State of New York*, 434 F.2d 386 (2d Cir. 1970), holding that a Spanish-speaking homicide defendant was entitled to a court-appointed interpreter. *Terry* and *Negron* stand for the unquestioned principle that a defendant must be afforded the means to understand the proceedings against him. Here, the defendant, through the medium of a court-appointed interpreter whose qualifications were established, had an adequate opportunity to evaluate the prosecutrix's testimony. Clearly, no error, manifest or otherwise, was committed.

### IV

Although the defendant moved unsuccessfully for a judgment of acquittal at the close of the State's case, he did not renew his motion at the close of all of the evidence or after the verdict. M.R.Crim.P. 29(a) and (b). Furthermore, he made no motion for a new trial. M.R.Crim.P. 33. By introducing evidence in his own behalf after the denial of his motion, the defendant waived appellate consideration of the sufficiency of the State's case-in-chief, *State v. Smith*, Me., 389 A.2d 314 (1978); *State v. Hanson*, Me., 331 A.2d 375 (1975), and by failing to renew his motion at the close of all of the evidence or after the verdict, the defendant has narrowed the scope of our review of the sufficiency of the totality of the evidence to the "manifest error-serious injustice" standard. *State v. Boyer*, Me., 392 A.2d 41 (1978); *State v. Smith, supra.*

The defendant argues that the evidence was insufficient to establish either force or penetration. The record discloses that the prosecutrix testified to both. "[T]he testimony of the prosecutrix is sufficient to support a rape conviction 'unless [her] testimony is either inherently improbable and incredible and does not meet the test of common sense.'" *State v. Foley*, Me., 392 A.2d 1094, 1096 (1978), *quoting State v. McFarland*, Me., 369 A.2d 227, 229 (1977). There was nothing improbable, incredible, or nonsensical about the prosecutrix's testimony.

We find no manifest error.

The entry is:

Appeal denied.

Judgment affirmed.

ARCHIBALD, J., did not sit.