**John O. HOWARD, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

Supreme Court of Delaware.

Submitted Nov. 15, 1982.

Decided March 11, 1983.

Samuel J. Frabizzio, Wilmington, and Neal A. Phillips, Wilmington, for appellant.

John A. Parkins, Jr., Deputy Atty. Gen., Wilmington, for appellee.

Before HERRMANN, C.J., and McNEILLY and MOORE, JJ.

MOORE, Justice:

Following a jury trial, John O. Howard was convicted of first degree rape (11 Del.C. § 764), first degree kidnapping (11 Del.C. § 783A), first degree conspiracy (11 Del.C. § 513), and third degree assault (11 Del.C. § 611). In this appeal from those convictions, he argues three points: 1) he did not knowingly and intelligently waive his *Miranda* rights; 2) the trial judge abused his discretion in refusing a guilty plea offered during trial; and 3) the defendant's motion for a new trial was improperly denied. We disagree and affirm these convictions.

## I.

Walking home in the early morning hours of August 9, 1980, the victim noticed two men following her. The evidence indicates that one of them was Howard. They grabbed her, pulled her off the sidewalk and threw her into the basement of an abandoned house. Her clothes were pulled off, and she was raped by one of the men. Howard then beat and threatened to kill her. The victim was also choked and gagged to prevent her from screaming. Howard raped her twice.

Eventually, Howard fell asleep, and the victim escaped. The other assailant had left before Howard began his vicious assault. She stopped a police car and directed the officers to the empty house. When they arrived, the police found Howard, partially dressed and still sleeping. He was arrested and later that day confessed to the crime.

Both Howard and the detective who questioned him testified at a suppression hearing. According to the detective, Howard was first questioned about three or four hours after his arrest. Immediately before interrogating Howard, the officer gave him the *Miranda* warnings. In response to the question, "Do you understand each of the rights that I have explained to you?", Howard answered, "Yes". He appeared, in the detective's opinion, to understand what the detective was saying to him. At this point in the interrogation, Howard indicated he wanted to talk. Before the statement was taken, the same *Miranda* warnings were read to Howard, and he expressly stated, in answer to the officer's direct questions, that he understood each of his rights.[1] The detective noticed the smell of alcohol on Howard's breath and, in the middle of the statement, asked, "Mr. Howard, I know that you have been drinking, but do you know what is going on right now?" Howard's unequivocal reply was, "Yeah. I'm being questioned about a rape that me and [the other assailant] did." The statement was detailed and contained selective admissions and denials.[2]

Howard testified that he had started to drink the afternoon before the attack and had just left a bar when he and the other

---

1. The relevant part of the statement reads:
   Question: You do understand that anything you say may be used against you in a court of law?
   Answer: Yes.
   Question: You do understand that you have the right to remain silent?
   Answer: Yes.
   Question: You do understand that you have the right to have an attorney present with you during any questioning now or in the future?
   Answer: Yes.
   Question: You do understand that if you cannot afford an attorney, the State will supply one to represent you?
   Answer: Yes.
   Question: You do understand that you have the right to stop answering questions at any time prior to the interview?
   Answer: Yes.
   Question: Are you willing to give a statement after being advised of your rights that were just discussed?
   Answer: Yes.

2. For example, he admitted having intercourse twice with the victim and recalled that the other man had had intercourse only once with her. Howard also admitted biting the victim, but he denied beating her.

assailant encountered the victim. During that day, he also had taken amphetamines and smoked marijuana. In contrast to the detective's testimony, Howard claimed that he had only been in the police station ten or fifteen minutes before he was questioned and that the interrogation occurred between 3:00 and 4:00 a.m. He identified the signature on the statement as his though he did not remember being given the *Miranda* warnings.

## II.

Howard argues that due to his intoxication and fatigue, he did not understand the consequences of making a statement. Thus, the argument continues, he did not knowingly and intelligently waive his *Miranda* rights.[3] In response, the State contends that the confession and the circumstances in which Howard gave the statement support the conclusion that he waived his rights.

■ It is beyond dispute that a required element of the *Miranda* warnings is notice that any statement made by the suspect can and will be used in court against him. *E.g., Miranda v. Arizona,* 384 U.S. 436, 469, 86 S.Ct. 1602, 1625, 16 L.Ed.2d 694 (1966); *Frazier v. United States,* 419 F.2d 1161, 1168 n. 31 (D.C.Cir.1969). This particular warning serves to emphasize the nature of the privilege against self-incrimination, the privilege which *Miranda* is designed to effectuate. *Miranda,* 384 U.S. at 468–69, 86 S.Ct. at 1624–25; *Frazier,* 419 F.2d at 1168 n. 31. If the suspect does not understand the consequences of giving a statement to the police, then the entire warning can hardly be deemed effective. *See Miranda,* 384 U.S. at 469, 86 S.Ct. at 1625.

■ The State has the burden of showing not only that the defendant was advised of his *Miranda* rights but that he knowingly and intelligently waived those rights. *E.g., Whalen v. State,* Del.Supr., 434 A.2d 1346, 1351 (1981). *See Dorbolo v. State,* Del. Supr., 405 A.2d 106 (1979). These issues

must be decided after examining "the totality of the circumstances including the behavior of the interrogators, the conduct of the defendant, his age, his intellect, his experience, and all other pertinent factors". *Whalen,* 434 A.2d at 1351. The evidence at the suppression hearing clearly showed that Howard had received *Miranda* warnings several times and declared each time that he understood them. Howard had stopped drinking between 1:00 and 1:30 a.m., and the police did not question him until nine hours later. To the extent that he was intoxicated when he was questioned, that intoxication does not *per se* invalidate an otherwise proper waiver of rights. *Commonwealth v. Smith,* Pa.Supr., 447 Pa. 457, 291 A.2d 103 (1972); *Commonwealth v. Seibert,* Pa.Super., 274 Pa.Super. 184, 418 A.2d 357 (1980); 3 Wharton's Criminal Evidence § 688, at 479 (13th ed. 1973). Instead, the question is whether Howard had sufficient capacity to know what he was saying and to have voluntarily intended to say it. *E.g., Seibert,* 418 A.2d at 359. Not only did Howard say he understood the warnings, but he also stated, in the midst of giving his statement, that he was aware of what was happening. The detailed nature of the statement and his recollection of his arrest belie any suggestion that his mental capacity was impaired when he was questioned. The selective admissions and denials in the statement itself also indicate his capacity and intent. We conclude that the State proved Howard to have understood his rights and to have knowingly and intelligently waived them. It follows, therefore, that the trial judge correctly admitted Howard's statement.

## III.

### A.

During the trial, Howard made a plea agreement with the State, exchanging guilty pleas to first degree rape and second

---

**3.** He does not argue that the police failed to advise him of the *Miranda* rights.

degree kidnapping for dismissal of the conspiracy and assault charges. Pursuant to Superior Court Criminal Rule 11,[4] the trial judge questioned Howard to determine that the pleas were voluntary, made with an understanding of the charges and the consequences of the plea, and had a factual basis. In the middle of this inquiry, the following colloquy occurred:

THE COURT: Do you admit that about that time and place, August 9th, 1980, in New Castle County, you intentionally had sexual intercourse with [the victim]?

· MR. HOWARD: Your Honor, I'm not admitting anything. The only reason I'm taking the plea is because I can't win the case.

MR. PHILLIPS [defense counsel]: Your Honor, I would ask that this plea be accepted under the Robinson case [*Robinson v. State,* Del.Supr., 291 A.2d 279 (1972)].

THE COURT: Well, does the State have a position I'm asked to take this as a Robinson plea. Does the State have a position one way or the other?

MS. MOLYNEUX [deputy attorney general]: Yes, Your Honor. The State doesn't offer this plea as a Robinson plea. This plea was offered the first time and taken as a straightforward plea, I believe. And the confession itself is straightforward. And I would not offer the plea under those circumstances.

MR. PHILLIPS: May I have a minute to talk to the defendant?

THE COURT: Well, we'll be recessing for a minute before we go forward with the trial.

Let me just say as a general matter that we have allowed Robinson pleas per-

haps in more situations than was originally intended in [*North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970)] or the Robinson case. I really know of no basis for a refusal to admit guilt. In the other cases there was such a basis. In particular, the Robinson case, there was amnesia, as I recall the case, and it was held that a person couldn't be required to admit what he, in fact, could not remember. As of now, I have heard no basis for any Robinson plea in this case. And in view of the withdrawal in the past, I would hesitate to do anything that is going to lead to further questions and problems in the future.

We'll stand in recess for five minutes.

\* \* \* \* \* \*

Howard now argues that the trial judge abused his discretion in refusing to accept the proffered *Robinson* plea. He also claims that the judge erred by failing to give reasons for rejecting the plea. The State responds by contending that it withdrew the offered plea agreement prior to entry of the plea. Thus, there was no agreement for the judge to accept. Furthermore, according to the State, Howard did not object when the plea was rejected, thus waiving the issue on appeal.

### B.

∎ When accepting a plea of guilty or nolo contendere, the trial judge must follow Criminal Rule 11, as interpreted in *Brown v. State,* Del.Supr., 250 A.2d 503 (1969); *Robinson v. State,* Del.Supr., 291 A.2d 279 (1972); and *Fromal v. State,* Del.Supr., 399 A.2d 529 (1979). *Brown* requires the judge, through direct interrogation of the defendant, to establish on the record that:

4. Rule 11 reads:

A defendant may plead not guilty, guilty or, with the consent of the Court, nolo contendere. The Court may refuse *to* accept a plea of guilty, and shall not accept such plea or a plea of nolo contendere without first addressing the defendant personally and determining that the plea is made voluntarily with understanding of the na-

ture of the charge and the consequences of the plea. If a defendant refuses to plead or if the Court refuses to accept a plea of guilty or if a defendant corporation fails to appear, the Court shall enter a plea of not guilty. The Court shall not enter a judgment upon a plea unless it is satisfied that there is a factual basis for the plea.

(1) the defendant understands that he has a right to speedy trial, with the assistance of counsel, which he will waive by his plea of guilty;

(2) he understands he will have the assistance of counsel at sentencing if his plea is accepted;

(3) he understands the nature of the charges against him, and that the trial judge has explained them to him;

(4) he is in fact guilty of the charge or charges to which he seeks to plead guilty;

(5) his plea of guilty has not been induced by any promise or representation as to what sentence will be imposed upon him;

(6) his plea of guilty has not been induced by threats or coercion by anyone;

(7) he understands the consequences of entering a plea of guilty;

(8) he seeks voluntarily to enter the plea of his own free will because he is guilty of the charge; and

(9) he has discussed with his attorney fully the entry of his plea of guilty. 250 A.2d at 505. Under *Robinson,* a defendant need not admit his actual commission of the offense in order for the judge to accept his plea. 291 A.2d at 281. Instead, the factual basis for the plea, which is the fourth element of the *Brown* inquiry, may be established by any of several methods. *Fromal,* 399 A.2d at 530–31.

■ Even if the court is satisfied with the results of the *Brown* inquiry, it is not required to accept the plea. Rule 11 gives the court discretion to reject the offered plea,[5] and the *Brown* inquiry is only a prerequisite to accepting a guilty plea. *See United States v. Bednarski,* 445 F.2d 364 (1st Cir.1971). In some circumstances, the rejection of a proffered guilty plea may constitute an abuse of discretion. *E.g.,*

*United States v. Hecht,* 638 F.2d 651 (3d Cir.1981); *United States v. Adams,* 634 F.2d 830 (5th Cir.1981); *United States v. Davis,* 516 F.2d 574 (7th Cir.1975); *United States v. Navedo,* 516 F.2d 293 (2d Cir.1975). Here, the trial judge showed an awareness of the competing interests always involved in a *Robinson* plea: the public suspicion or disfavor of a situation in which a defendant pleads guilty and goes to jail while denying his guilt, and the saving in time and expense that accrues to the court and counsel as a result of a guilty plea. He also appears to have considered Howard's previous withdrawal of a guilty plea in this case and the State's opposition to a *Robinson* plea. We can not say that the trial judge abused his discretion when he rejected Howard's plea for these reasons. Since there is no error, it follows that there is no plain error, which is the standard of review applicable to Howard's failure to object to the Court's rejection of his plea.

## C.

■ The trial judge who accepts a plea of guilty or nolo contendere must establish on the record that the plea is voluntary. *Brown,* 250 A.2d at 505; Super.Ct. Crim.R. 11. The judge, however, is not expressly required by Rule 11 to set forth on the record his reasons for rejecting an offered plea of guilty. *United States v. Moore,* 637 F.2d 1194 (8th Cir.1981); *State v. Doucette,* Me.Supr.Jud.Ct., 398 A.2d 36 (1978). Instead, the defendant bears the burden of bringing pertinent issues to the judge's attention and developing a meaningful record. *Doucette,* 398 A.2d at 39. *See also Goddard v. State,* Del.Supr., 382 A.2d 238 (1977); *Wright v. State,* Del.Supr., 374 A.2d 824 (1977). As a matter of prudence and to facilitate appellate review of a judge's refusal to accept a guilty plea,

---

**5.** There is no federal constitutional right to have one's guilty plea accepted. *Santobello v. New York,* 404 U.S. 257, 262, 92 S.Ct. 495, 498, 30 L.Ed.2d 427 (1971); *North Carolina v. Alford,* 400 U.S. 25, 38 n. 11, 91 S.Ct. 160, 168 n.

11, 27 L.Ed.2d 162 (1970); *United States v. Jackson,* 390 U.S. 570, 584, 88 S.Ct. 1209, 1217, 20 L.Ed.2d 138 (1968); *Lynch v. Overholser,* 369 U.S. 705, 719, 82 S.Ct. 1063, 1072, 8 L.Ed.2d 211 (1962).

though, the judge should articulate his reasons for so acting. *United States v. Davis*, 516 F.2d 574 (7th Cir.1975); *Doucette,* 398 A.2d at 39. In light of Howard's failure to request a more specific statement from the trial judge, the judge's comments can only be deemed inadequate, and require reversal, if the deficiency is "basic, serious and fundamental in [its] character", clearly depriving Howard of a substantial right, or obviously shows manifest injustice. *Ward v. State,* Del.Supr., 366 A.2d 1194, 1197 (1976); Super.Ct.Crim.R. 52(b).

After reviewing the record, we conclude that the trial judge adequately stated the reasons underlying his decision. The judge expressed his concern over an apparently unnecessary *Robinson* plea. He also commented on Howard's withdrawal of a previous guilty plea, and he was certainly aware of the State's opposition to a *Robinson* plea. Perhaps defense counsel would have preferred a more clear-cut or detailed explanation from the judge, but that was for counsel to request then and there. The record is sufficient for us to complete our review function, and clearly there is no plain error. *Accord State v. Blanchard,* Me.Supr.Jud.Ct., 409 A.2d 229, 233–34 (1979).

### IV.

■ Howard, acting *pro se,* moved for a new trial under Superior Court Criminal Rule 33.[6] Though the motion was filed in a timely fashion, neither Howard nor his attorney[7] requested a hearing on the motion. Superior Court Criminal Rule 47(b) states "A motion for a new trial under Rule 33 ... shall be deemed to have been withdrawn with leave of court unless, within 10 days after the filing of such motion, the moving party makes application to the Court, upon notice, for a hearing." Since no hearing was requested, the motion is presumed to be withdrawn. To the extent that any order was required to dispose of the motion in this situation, the Superior Court did not err in denying the motion.

AFFIRMED.

6. That rule provides:
   The Court on motion of a defendant may grant a new trial to him if required in the interest of justice. If trial was by the Court without a jury the Court on motion of a defendant for a new trial may vacate the judgment if entered, take additional testimony and direct the entry of a new judgment. A motion for a new trial based on the ground of newly discovered evidence may be made only before or within 2 years after final judgment, but if an appeal is pending the Court may grant the motion only on remand of the case. A motion for a new trial based on any other ground shall be made within 10 days after verdict or finding of guilty or within such further time as the Court may fix during the 10-day period.

7. The motion indicates that a copy was sent to Howard's attorney.