# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| **STATE OF DELAWARE** | ) | |
| | ) | |
| | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **ID No. 1205012598** |
| | ) | |
| **JOHN BROMWELL** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |
| | ) | |
| | ) | |

## OPINION

**Submitted:** April 15, 2016
**Decided:** July 29, 2016

*Upon Defendant's Motion for Postconviction Relief,* **DENIED**.
*Upon Conflict Counsel's Motion to Withdraw*, **GRANTED**.

Andrew J. Vella, Esquire, Deputy Attorney General, Department of Justice, Carvel State Building, 820 North French Street, 7th Floor, Wilmington, Delaware 19801

John Bromwell, *pro se*, SBI No. 00294095, James T. Vaughn Correctional Center, 1181 Paddock Road, Smyrna, Delaware 19977

**BRADY, J.**

## I. INTRODUCTION AND PROCEDURAL HISTORY

Before the Court is a Motion for Postconviction Relief filed pursuant to Superior Court Criminal Rule 61 ("Rule 61") by John Bromwell ("Defendant") on January 6, 2014.[1] On July 30, 2012, Defendant was indicted on two counts of Robbery in the First Degree, two counts of Possession of a Firearm During the Commission of a Felony, and one count of Conspiracy in the Second Degree.[2] On January 2, 2013, Defendant pled guilty to Robbery in the First Degree, Conspiracy in the Second Degree, and Possession of a Firearm By a Person Prohibited ("PFBPP").[3] On April 12, 2013, Defendant was sentenced to four years at Level V on the robbery charge, a period of probation on the conspiracy charge, and eight years at Level V for the PFBPP charge.[4] Defendant did not file a direct appeal to the Delaware Supreme Court challenging his sentence or plea.

On January 6, 2014, Defendant filed the instant matter for postconviction relief[5] and on September 3, 2014, Christopher Koyste, Esquire ("Conflict Counsel") was appointed to represent the Defendant in his postconviction proceeding.[6] On March 4, 2015, Conflict Counsel filed a Motion to Withdraw as Counsel, indicating that he found no merit in Defendant's claims, could not find any other possible claims for Defendant, and could therefore not ethically advocate on behalf Defendant.[7] On November 12, 2015, Defendant filed a response to Conflict Counsel's Motion to Withdraw as Counsel[8] and on March 10, 2016, the State filed a response to

---

[1] Def's Mot. for Postconviction Relief, *State v. Bromwell*, No. 1205012598, Docket No. 20 (Jan. 6, 2014).
[2] Indictment, *State v. Bromwell*, No. 1205012598, Docket No. 2 (July 30, 2012).
[3] Guilty Plea, *State v. Bromwell*, No. 1205012598, Docket No. 16 (Jan. 2, 2013).
[4] Sentence, *State v. Bromwell*, No. 1205012598, Docket No. 19 (Apr. 12, 2013).
[5] Def's Mot. for Postconviction Relief, *State v. Bromwell*, No. 1205012598, Docket No. 20 (Jan. 6, 2014).
[6] *See* Mot. to Withdraw as Counsel, *State v. Bromwell*, No. 1205012598, Docket No. 36 (Mar. 4, 2015).
[7] *Id.*
[8] Attached to Defendant's response is a letter dated July 18, 2012, from trial counsel, Anthony A. Figloila, Esquire, to Defendant.

Defendant's motion.[9]  The Court informed Defendant on March 10, 2016, that he had until April 14, 2016, to file a final response and if none was received the matter would be taken under advisement.[10]  Defendant did not file a final response and on April 15, 2016, the matter was taken under advisement.

## II. FACTS[11]

On April 28, 2012, Wilmington Police responded to Miguel Moda Barbershop at 816 Maryland Avenue, Wilmington, Delaware in reference to an armed robbery.  Witnesses told police that two black males entered the barbershop, one armed with a handgun and the other wearing a black mask, and ordered everyone to the floor.  The subject wearing the black mask went behind the barbershop counter and removed a leather briefcase containing $1,500 and a purse.

The day before the robbery the two subjects were talking with Defendant outside the barbershop.  Defendant was located in the area of the barbershop after the robbery and was detained and questioned.  Defendant indicated that he spoke to someone named "Black" but left the area before the robbery to look at some jewelry.

Through a confidential informant, police identified Jermaine Deputy ("Deputy") and Javone Johnson ("Johnson") as the two subjects who committed the robbery.  The confidential informant also told law enforcement that Raul Rivera ("Rivera") was in possession of the handgun used in the robbery and that Defendant, Deputy, Johnson, and Rivera were in possession of a sawed off shotgun.

---

[9] State's Response, *State v. Bromwell*, No. 1205012598, Docket No. 42 (Mar. 10, 2016).

[10] Order, *State v. Bromwell*, No. 1205012598, Docket No. 41 (Mar. 10, 2016).

[11] Unless otherwise stated, the following facts are taken from Conflict Counsel's Motion to Withdraw as Counsel, the initial crime report of Patrolman Wilkers, and the May 14, 2012 Supplemental report of Detective Gifford. *See* Mot. to Withdraw as Counsel, *State v. Bromwell*, No. 1205012598, Docket No. 36 (Mar. 4, 2015); *see also* Report of Wilkers and Supplemental Report of Detective Gifford, Ex. F to Mot. to Withdraw as Counsel, *State v. Bromwell*, No. 1205012598, Docket No. 36 (Mar. 4, 2015).

3

On May 11, 2012, Defendant was taken into custody for an outstanding warrant related to a burglary of a motel and was interviewed. Defendant told Detective Gifford that he had a conversation in front of the barbershop the day before the robbery with Danny Santos ("Santos"), Deputy, and Johnson about where the money was located in the barbershop. Defendant then admitted that after the robbery he took a bag, a purse, a blue jacket, pants, and other things to a motel to discard them in a dumpster.

On May 21, 2012, Johnson was taken into custody and interviewed. Johnson told police that Defendant set up the robbery. Johnson advised officers that Santos informed Defendant about the whereabouts of the money in the barbershop and Defendant relayed that information to Johnson and Deputy. Johnson also told officers that Defendant had given a hand gesture to signal when Johnson and Deputy to enter the barbershop and that he, Deputy, and Defendant split the money from the barbershop robbery.

On June 12, 2012, Defendant was again taken into custody and interviewed. Defendant informed police that he exchanged tattoos with Rivera for a shotgun which he told Rivera to bring to the house of Christopher Rojas ("Rojas"). Defendant admitted that he had sawed off the barrel of the shotgun using a hack saw, that he mistakenly sawed it too short and had to use a screw from a workbench to fix the handle. He said he put a rubber grip on the firearm. Defendant also admitted that he received $750 from Johnson from the robbery.

### III. PARTIES CONTENTIONS

### A. Defendant's Motion for Postconviction Relief

Defendant argues that he was mislead by his trial counsel before he entered a plea of guilty because he was incorrectly advised that under accomplice liability he could be sentenced

4

to life for the Robbery in the First Degree charge.[12]  Next, Defendant contends that he requested his counsel to file a motion to suppress and was told that "once I was indicted he'll file it on my robbery case (he never did)."[13]  It appears the basis for the motion would be that Defendant was on prescription medication at the time he gave statements to police.[14]  Defendant argues that he was coerced to accept the State's plea offer, stating "the State wanted a habitual plea, my codefendants were to testify I signed the plea in fear."[15]  Defendant argues that his trial counsel failed to state the facts of the case and show him the evidence on the day he entered his plea.[16]

## B.  Conflict Counsel's Motion to Withdraw

Conflict Counsel indicated that he found no merit to Defendant's argument that he was incorrectly advised the he could be convicted under an accomplice liability theory.  Conflict counsel notes that the victims advised police that Defendant was observed the day before the robbery speaking with Johnson and Deputy, that Defendant admitted that he was the "go-between" for the robbery, that Defendant relayed information about the location of the money in the barbershop to Johnson, and that Defendant admitted to discarding clothing worn during the robbery as well as the victim's purse.[17]  Conflict Counsel further notes that Johnson told police that Defendant set up the robbery, that Defendant used a hand gesture to signal when Johnson and Deputy should enter the barbershop, and that Defendant admitted that he received money from the robbery.[18]

Conflict counsel further argues that Defendant was habitual offender eligible and could have been sentenced to life.  Counsel notes that after reviewing Defendant's criminal history, he

---

[12] Def's Mot. for Postconviction Relief, *State v. Bromwell*, No. 1205012598, Docket No. 20 (Jan. 6, 2014).
[13] *Id.*
[14] *Id.*
[15] *Id.*
[16] *Id.*
[17] Mot. to Withdraw as Counsel, *State v. Bromwell*, No. 1205012598, Docket No. 36, at 7 (Mar. 4, 2015).
[18] *Id.*

confirmed Defendant had the requisite three prior felony convictions to support a petition to declare Defendant an habitual offender.[19] Counsel further argues that nothing in the record reflects that Defendant was advised that he would be sentenced to life if convicted of Robbery in the First Degree.[20]

Conflict counsel further found no merit to Defendant's argument that trial counsel was ineffective for failing to file a suppression motion, despite informing Defendant that he would do so. Counsel notes that Defendant's trial counsel never told Defendant that he would file a motion to suppress.[21] Counsel further argues that there were no grounds for which trial counsel could have filed a motion.[22] Although Defendant's motion is unclear with regard to what trial counsel should have sought to suppress, conflict counsel evaluates whether the statements Defendant made to police would have properly been subject to suppression.

Counsel notes that Defendant gave three statements to police, one on April 28, 2012 (the "April Statement"), one on May 11, 2012 (the "May Statement"), and another on June 12, 2012 (the "June Statement"). Conflict counsel contends that only the May and June statements were potentially incriminating.[23] Counsel argues that the April 28, 2012 statement was not incriminating and, as a result, Defendant suffered no prejudice from trial counsel's alleged deficiency in failing to seek its suppression.[24] Counsel further notes that the May 11, 2012 interview was the product of a voluntary *Miranda* waiver.[25] Conflict Counsel notes that the United State's Supreme Court has stated that coercive police activity is a necessary predicate to finding that a confession is not voluntary within the meaning of the Due Process Clause of the

---

[19] *Id.* at 8.
[20] *Id.*
[21] *Id.*
[22] *Id.*
[23] *Id.* at 9.
[24] *Id.*
[25] *Id.*

6

Fourteenth Amendment.[26] Counsel argues that the record does not support a finding that Detective Gifford engaged in any coercive police activity, rather Defendant was confronted with the truthfulness of his statements and then decided to tell detectives that "he doesn't want to go to court and then gives the name Jermaine Deputy as the second suspect" and that "he does know what happened with the robbery but he doesn't want to testify."[27]

Conflict Counsel stated that he found no merit in Defendant's argument that his June 12, 2012 statement should have been suppressed because he was under the influence of prescription medication. Counsel notes that the Delaware Supreme Court has previously held that "[t]o the extent that [the defendant] was under the influence of any drug when he was questioned, his condition does not *per se* invalidate an otherwise proper waiver of rights."[28] Rather, counsel notes, "the question is whether [the defendant] had sufficient capacity to know what he was saying and to have voluntarily intended to say it."[29] Conflict counsel notes that the Court held that a defendant's "recollection of his arrest and interrogation negates any implication that his mental capacity was impaired when he was questioned."[30] Conflict counsel contends that Defendant's recollection of the events surrounding the sawed off shotgun, the subject of the June 12, 2012 interview, indicates that Defendant knew what he was saying.[31] Conflict counsel notes that Defendant admitted that he sawed off the shotgun's barrel, identified the workbench that was used, and stated that he used hack saw to cut off the barrel of the gun. Conflict counsel further notes that Defendant explained how the stock of the shotgun was cut too short and that he

---

[26] *Id.* (citing *Brown v. Mississippi*, 297 U.S. 278, 287 (1936); *Colorado v. Connelly*, 479 U.S. 157, 163 (1987)).

[27] *Id.* at 10; *see also* Report of Wilkers and Supplemental Report of Detective Gifford, Ex. F to Mot. to Withdraw as Counsel, *State v. Bromwell*, No. 1205012598, Docket No. 36 (Mar. 4, 2015).

[28] Mot. to Withdraw as Counsel, *State v. Bromwell*, No. 1205012598, Docket No. 36, at 10 (Mar. 4, 2015) (quoting *Traylor v. State*, 458 A.2d 1170, 1176 (Del. 1983) (citing *Howard v. State*, 458 A.2d 1180, 1183 (Del. 1983); *State v. Gordon*, 387 A.2d 611 (Me. 1978); *Commonwealth v. Cornish*, 370 A.2d 291 (Pa. 1997) (3 WHARTON'S CRIMINAL EVIDENCE § 689, at 481 (13th ed. 1973))).

[29] *Id.* (internal citations omitted).

[30] *Id.* at 10-11.

[31] *Id.* at 11.

had to use a screw from the workbench to fix it and applied a rubber grip to the handle of the gun.[32] Counsel further notes that Defendant explained how Rojas came into possession of the shotgun.[33] Counsel therefore argues that Defendant's clear explanation of the events "negates" his claim that he was mentally incapacitated due to his alleged intoxication from prescription medication.[34]

Conflict counsel also found no merit to Defendant's argument that he was coerced to accept the State's plea because he was told by trial counsel that the State would seek to sentence him as an habitual offender, which Defendant contends they were not going to seek. Conflict counsel argues that it is apparent that the State was seeking to declare Defendant an habitual offender because three of the four plea offers contained habitual offender provisions.[35] Conflict counsel notes that the October 15, 2012 and December 17, 2012 plea offers both indicated that Defendant was habitual offender eligible and contained the provision: "Defendant understands that entry of the above plea(s) in this matter subjects him to possible sentencing as an habitual offender pursuant to 11 *Del. C.* § 4214(a) and (b)."[36] Conflict counsel further notes that the January 2, 2013 plea agreement, which Defendant signed, indicated that Defendant was habitual offender eligible and stated, "Defendant understands that he will be sentenced as an habitual offender pursuant 11 *Del. C.* § 4214(a) on the PFBPP charge."[37] Conflict counsel argues that trial counsel was correct in advising Defendant that the State was seeking to sentence him as an habitual offender and that it was not coercive to inform Defendant of the significant penalty he potentially faced.[38]

---

[32] *Id.*
[33] *Id.*
[34] *Id.*
[35] *Id.* at 12.
[36] *Id.*
[37] *Id.*
[38] *Id.*

8

## C. The State's Response

The State argues that Defendant's claims that he did not enter his plea of guilty knowingly and that he was coerced into entering the plea are procedurally barred by Rule 61(i)(3) because they were not asserted in the proceedings leading to the judgment of conviction or raised on direct appeal.[39] The State further argues that Defendant has failed to meet the exceptions to the procedural bars as to those claims.[40]

The State contends that Defendant's claim that he was mislead by trial counsel when he was informed that he could possibly receive a life sentence if found guilty of Robbery in the First Degree, under an accomplice liability theory, is without merit.[41] The State notes that 11 *Del. C.* § 271, provides that an accomplice is a person that "intending to promote or facilitate the commission of [an] offense . . . solicits, requests, commands, importunes or otherwise attempts to cause [another person] to commit it; or aids or attempts to aid [another] person in committing it."[42] The State further notes that Delaware has abandoned the common law distinction between principles and accessories and that "Section 271, generally, 'makes a person guilty of an offense committed by another person if an appropriate degree of complicity in the offense can be proved.'"[43] The State argues that Defendant could have, in fact, been found guilty of robbery under an accomplice liability theory.[44] The State notes that Defendant helped set up and plan the robbery, that he did not enter the barbershop because the patrons and employees knew him, and

---

[39] State's Response, *State v. Bromwell*, No. 1205012598, Docket No. 42, at 3-6 (Mar. 10, 2016).

[40] The State argues that Defendant failed to move to withdraw his guilty plea prior to sentencing, raise the issue on direct appeal, and has provided no reason why he failed to do so. *Id.* The State further argues that Defendant has failed to show any prejudice because he does not claim that he would not have entered a plea of guilty had he seen the evidence in the case in advance of trial. *Id.* The State further notes that Defendant has failed to allege that he would not have entered a guilty plea if he disregarded trial counsel's advice regarding accomplice liability and criminal responsibility for the robbery. *Id.*

[41] *Id.* at 6-10.

[42] *Id.* at 6-7.

[43] *Id.* at 7.

[44] *Id.* at 7-8

that Defendant admitted to officers that he received proceeds from the robbery.[45]  The State further notes that if found guilty of the robbery charge Defendant could have been declared an habitual offender and sentenced to life based on his prior criminal history, under 11 *Del. C.* § 4214(a).[46]

The State argues that Defendant's argument that he was coerced into taking the plea is without merit.[47]  The State notes that Defendant's statements when he entered his plea of guilty reflect that he knew what he was doing, that he was not coerced into taking the plea, and that he was satisfied with trial counsel's representation.[48]  The State argues that Defendant is bound by the statements he made in the plea colloquy and in the Truth-in-Sentencing Guilty Plea Form and has failed to meet his burden of presenting sufficient legal and factual bases for collaterally attacking his criminal conviction.[49]

The State argues that Defendant's claims that his trial counsel was ineffective for failing to file a motion to suppress his statement to police, and the argument that he was "high on prescription pills" when he made statements to police are without merit.[50]  The State argues that Defendant has not alleged that he was prejudiced by trial counsel's alleged deficient performance.[51]  Specifically, the State argues that Defendant does not claim, and cannot show, that the result of the case would have been different had counsel filed a motion to suppress.[52]  The State further argues that whether or not Defendant was under the influence of prescription

---

[45] *Id.*
[46] *Id.*
[47] *Id.* at 8-10.
[48] *Id.*
[49] *Id.*
[50] *Id.* at 10-14.
[51] *Id.* at 13.
[52] *Id.*

10

drugs at the time he made inculpatory statements is not an issue properly raised in a suppression motion.[53]

The State also argues that Defendant has failed to show that trial counsel's performance fell below an objective standard of reasonableness.[54] Specifically, the State argues that trial counsel's performance is not rendered ineffective merely because he failed to file a meritless motion to suppress.[55] The State notes that Defendant spoke with police on three separate occasions and in his second and third interview Defendant was read, and waived, his *Miranda* rights and agreed to speak with detectives.[56] The State argues that Defendant had sufficient capacity to know what he was saying and to have voluntarily intended to say it.[57] In support of this contention, the State notes that Defendant could recall details and provided selective admissions and denials.[58]

## IV. ANALYSIS

## A. Procedural Bars

Before addressing the merits of Defendant's claims, the Court must apply the procedural bars set forth in Superior Court Criminal Rule 61(i).[59] The version of the Rule in effect at the time that this Motion was filed provides that the Court must reject a motion for postconviction relief if it is procedurally barred.[60] That Rule provides that a motion is procedurally barred if the motion is untimely, repetitive, a procedural default exists, or the claim has been formerly

---

[53] *Id.*
[54] *Id.* at 13-14.
[55] *Id.* at 13.
[56] *Id.* at 13-14.
[57] *Id.*
[58] *Id.*
[59] *Younger v. State*, 580 A.2d 552, 554 (Del. 1990).
[60] As the Delaware Supreme Court noted in *Collins v. State*, a Motion for Postconviction Relief is controlled by the version of Rule 61 in effect when the motion was filed and not by any former version of the rule. *Collins v. State*, 2015 WL 4717524, at *1 (Del. Aug. 6, 2015).

11

adjudicated.[61]  Rule 61(i)(1) provides that a motion for postconviction relief is time barred when it is filed more than one year after the conviction has become final or one year after a retroactively applied right has been newly recognized by the United States Supreme Court or by the Delaware Supreme Court.[62]  Rule 61(i)(2) provides a claim is waived if the defendant has failed to raise it during a prior postconviction proceeding, unless "consideration of the claim is warranted in the interest of justice."[63]  Rule 61(i)(3) bars consideration of any claim "not asserted in the proceedings leading to the conviction" unless the petitioner can show "cause for relief from the procedural default" and "prejudice form violation of the movant's rights."[64]  Rule 61(i)(4) provides that any claim that has been adjudicated "in the proceedings leading to the judgment of conviction, in an appeal, in a postconviction proceeding, or in a federal habeas corpus proceedings" is barred "unless reconsideration of the claim is warranted in the interest of justice."[65]

If a procedural bar exists, the Court will not consider the merits of Defendant's postconviction claim unless Defendant can show that the exception found in Rule 61(i)(5) applies.[66]  Rule 61(i)(5) provides that the procedural bars can be overcome if Defendant makes out a "colorable claim that there was a miscarriage of justice because of a constitutional violation that undermines the fundamental legality, reliability, integrity or fairness of the proceedings leading to the judgment of conviction."[67]

---

[61] *See* Super. Ct. Crim. R. 61(i)(1)-(4) (effective May 6, 2013).
[62] Super. Ct. Crim. R. 61(i)(1) (effective May 6, 2013).
[63] Super. Ct. Crim. R. 61(i)(2) (effective May 6, 2013).
[64] Super. Ct. Crim. R. 61(i)(3) (effective May 6, 2013).
[65] Super. Ct. Crim. R. 61(i)(4) (effective May 6, 2013).
[66] *See* Super. Ct. Crim. R. 61(i)(5) (effective May 6, 2013).
[67] *Id.*

Defendant's Motion for Postconviction Relief is not procedurally barred. Defendant filed his motion within one year from the date the conviction became final.[68] Defendant has not raised these issues before and therefore they are not repetitive nor were they formally adjudicated.

## B. Defendant's Claims of Ineffective Assistance of Counsel

### 1. Applicable Law

Defendant claims that his trial counsel was ineffective for failing to file a Motion to Suppress after informing Defendant that he would do so. To prevail on an ineffective assistance of counsel claim, a petitioner must show that counsel's performance was deficient and that the deficiency prejudiced the defendant.[69]

In the context of a guilty plea, "the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'"[70] The prejudice requirement "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."[71] It is not sufficient to "show that the errors had some conceivable effect on the outcome of the proceeding."[72]

Because Defendant must prove both prongs of *Strickland*, "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the

---

[68] Defendant was sentenced on April 12, 2013, and this Motion for Postconviction Relief was filed on January 6, 2014. Defendant did not file a direct appeal with the Delaware Supreme Court. Therefore, pursuant to Rule 61(m), Defendant's motion is not time barred. *See* Super. Ct. Crim. R. 61(m) (effective May 6, 2013).
[69] *Strickland v. Washington*, 446 U.S. 668, 687 (1984).
[70] *Id.* at 56 (quoting *McCann v. Richardson*, 397 U.S. 759, 771 (1973)).
[71] *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).
[72] *Strickland*, 446 U.S. at 693.

defendant as a result of the alleged deficiencies."[73]  Instead, "[i]f it is easier to dispose of an ineffectiveness claim on the grounds of lack of sufficient prejudice, . . . that course should be followed."[74]

In determining the effect of intoxication on a defendant's waiver of *Miranda* rights, the Delaware Supreme Court in *Traylor v. State*, stated that "prior intoxication does not, *per se*, invalidate an otherwise proper waiver of *Miranda* rights."[75]  The Court went on to note that the proper inquiry is "whether [defendant] had sufficient capacity to know what he was saying and to have voluntarily intended to say it."[76]  Delaware courts have looked to the detailed nature of the statements made by defendants to determine whether they had sufficient capacity to know what they were saying and to have voluntarily intended to say it.[77]

## 2. Discussion

As an initial matter, Defendant's claim that his trial counsel told him that he would file a motion to suppress is not supported by the record.  Attached to Defendant's response to Conflict Counsel's Motion to Withdraw is a letter dated July 18, 2012, from trial counsel to Defendant.  This letter indicates that if Defendant was indicted, trial counsel and Defendant would "go through the entire discovery process, *evaluate whether there is any grounds for Suppression* and how strong the State's case against [Defendant] actually is."[78]  Defendant contends that this statement indicates that trial counsel would file a motion to suppress.  It does not.  The question then becomes whether Defendant has established there is a legal basis for such a motion, the failure to file which, would constitute a deficiency in trial counsel's assistance.

---

[73] *Id.* at 697.
[74] *Id.*
[75] *Hubbard v. State*, 16 A.3d 912, 919 (Del. 2011) (quoting *Traylor v. State*, 485 A.2d 1170, 1176 (Del. 1983)).
[76] *Id.*
[77] *Id.* (citing *Howard v. State*, 458 A.2d 1180 (Del. 1983)).
[78] Def.'s Resp. to Mot. to Withdraw as Counsel, *State v. Bromwell*, No. 1205012598, Docket No. 43 (Nov. 12, 2015) (emphasis added).

Although Defendant's Motion for Postconviction Relief is unclear with regard to what trial counsel should have sought to suppress, conflict counsel clearly thought, and the Court concurs, Defendant is referring to the statements he made to police. Defendant made three statements to police, one in April, one in May, and one in June. Of these statements the ones in May and June were potentially incriminating, and made after Defendant waived his *Miranda* rights. As to the April and May statements, Defendant's claim of ineffective assistance of counsel is conclusory.[79] Defendant has not stated any ground based upon which those two statements should have been suppressed. Conflict counsel concluded there were no grounds to support bringing such a motion. Defendant has failed to establish, as to these statements, that trial counsel's performance was deficient, as is required by *Strickland's* first prong.[80] Defendant further makes no specific claims as to how trial counsel's failure to file a motion to suppress affected his decision to enter a plea of guilty, if at all. Defendant has failed to establish prejudice as is required by *Strickland's* second prong.[81]

With regard to the June Statement, Defendant now contends, for the first time, that he was interviewed by officers while he was "high on prescription pills."[82] The Court infers he contends counsel should have filed a motion to suppress that statement based on his intoxication. With the exception of claiming that he was under the influence of controlled substances when he made his third statement to police, Defendant does not elaborate on how or whether his condition affected his decision to give police a statement nor does he provide legal support for a claim that the statement should be suppressed. To the extent Defendant claims that his waiver of *Miranda*

---

[79] Conclusory allegations are insufficient to establish a claim of ineffective assistance of counsel. *See Younger v. State*, 580 A.2d 552, 555 (Del. 1990).
[80] *See Strickland*, 446 U.S. at 687.
[81] *See id.*
[82] Def's Mot. for Postconviction Relief, *State v. Bromwell*, No. 1205012598, Docket No. 20 (Jan. 6, 2014).

was invalid due to his condition at the time he waived those rights, this claim is, again, conclusory and, is therefore, without merit.[83]

There is no evidence in the record that Defendant was "high on prescription pills" when he the made the June Statement. The record before the Court does not reflect that Defendant ever made trial counsel aware that he was intoxicated at the time he made the statements nor was there any other indication that Defendant was intoxicated. According to the synopsis of the interview made by the officer, Defendant's statements appear to be responsive to the questions Defendant was asked and relate to the subject matter of the interview.[84] Furthermore, the statements are detailed accounts of the events about which Defendant was questioned.[85]

Even apart from the June Statement, there was overwhelming evidence to support a conviction. Specifically, police were advised by witnesses about the events that occurred in the barbershop the day of the robbery and that Defendant was seen talking to two individuals in front of the barbershop the day before the robbery. Officers found Defendant near the barbershop shortly after the robbery. In addition, a confidential informant identified Deputy and Johnson as the two men who entered the barbershop and informed police that Defendant was in possession of a sawed off shotgun. Johnson told police that Defendant set up the robbery, gave a hand gesture to indicate when he and Deputy should enter the barbershop, and that Defendant was advised by Santos where the money was located within the barbershop. Johnson further

---

[83] Conclusory allegations are insufficient to establish a claim of ineffective assistance of counsel. *See Younger*, 580 A.2d at 555.

[84] *See* Report of Wilkers and Supplemental Report of Detective Gifford, Ex. F to Mot. to Withdraw as Counsel, *State v. Bromwell*, No. 1205012598, Docket No. 36 (Mar. 4, 2015).

[85] *See id.* In the June Statement, Defendant informed police that he was creating tattoos for Rivera when Rivera showed him a shotgun and told Defendant he could have it. *Id.* Defendant stated that Rivera did not pay him for the tattoo and that Defendant told Rivera to bring the shotgun to Rojas's house. Defendant admitted that he had sawed off the barrel of a shotgun using a hack saw, identified the work bench used, stated that he mistakenly sawed the barrel of the gun too short and had to use a screw from the workbench to fix the handle, and that he put a rubber grip on the firearm. *Id.* Defendant further informed police where Rivera left the shotgun, allegedly in an alleyway, and that Rojas told Defendant to sell the shotgun to make some money. *Id.* Defendant then admitted that he received $750 from Johnson for the robbery. *Id.*

16

indicated that he, Deputy, and Defendant split the proceeds from the robbery. Defendant also gave two statements to police relating to the robbery incident. In May of 2012, Defendant told police he was relaying information back and forth between Santos, Deputy, and Johnson about where the money was located. Defendant further advised officers that he destroyed evidence of the robbery by discarding it in a dumpster at a nearby hotel. The overwhelming evidence suggests that, even absent the June Statement, an objectively reasonable trial attorney would have advised Defendant to accept the plea offer.

Trial counsel's performance was not deficient as he was unaware of any reason to suppress the June Statement. The record reflects that apart from the June Statement there was overwhelming evidence to support a conviction. Further, Defendant makes no claims as to how trial counsel's failure to file a motion to suppress his statement would have affected his decision to enter a plea of guilty, if at all. Defendant has failed to establish prejudice as required by *Strickland's* second prong.[86]

## C. Defendant's Other Claims

Defendant argues that he was coerced by trial counsel into entering a plea of guilty because trial counsel informed him that he could be convicted of Robbery in the First Degree under an accomplice liability theory, and sentenced, as an habitual offender, for up to life imprisonment. Defendant does not dispute that he could have been sentenced as an habitual offender, rather he argues that the State never intended to do so based on a statement the State made at the sentencing hearing.[87] To the extent Defendant argues that his trial counsel was

---

[86] *See Strickland*, 446 U.S. at 687.
[87] Def's Mot. for Postconviction Relief, *State v. Bromwell*, No. 1205012598, Docket No. 20 (Jan. 6, 2014). The statement to which Defendant refers is:

> THE COURT: Can I ask you about that? The plea agreement mentioned that he might -- you understood he might be sentenced as a habitual offender, but there's no such motion filed.

17

ineffective for advising him that the State intended to sentence him as an habitual offender trial counsel's performance was not deficient. Throughout the plea negotiations the State indicated that they intended to file a motion to declare Defendant an habitual offender.[88] Trial counsel had no way of knowing that the State would not file a motion to declare Defendant an habitual offender. In fact, the Court, at the time of sentencing, expressed surprise that the State did not seek to sentence Defendant as an habitual offender.[89] In addition, the State's failure to seek to declare Defendant an habitual offender only benefited him, Defendant faced a far less severe sentence then he would have had he been declared an habitual offender. There is no evidence in the record which reflects that the State would not seek to have sentenced Defendant as an habitual offender if he had gone to trial. All the parties, including Defendant, acknowledge that Defendant met the statutory requirements for being declared an habitual offender. Defendant has failed to establish that trial counsel's performance was deficient, as is required by *Strickland's* first prong.[90]

Further, the evidence is overwhelming that Defendant participated in the planning and execution of the crime. Pursuant to 11 *Del. C.* § 271(2)(b), a person is guilty of an offense

---

MR. VELLA: And the State declined to do that. The State declined to do that because he's not present during the robbery. And the State personally -- the State personally has reservation about when we do habitual motion, when we should do a motion. And the Court may feel I should have done it, and I'm okay with that. I just -- I looked at this case and this is where I came out relying on the time that he can possibly get, because he pled to serious -- he pled to serious felonies that exposed him to a great amount of time. And granted it's good to have that hammer, but at this point he's pled to two felonies that can get him up to 50 years in jail. Excuse me. Thirty-six. I think we're at 36.

Transcript of Sentencing, *State v. Bromwell*, No. 1205012598, Docket No. 27 (Sept. 12, 2014).

[88] The October 15, 2012 and December 17, 2012 plea offers both indicated that Defendant was habitual offender eligible and contained the provision: "Defendant understands that entry of the above plea(s) in this matter subjects him to possible sentencing as an habitual offender pursuant to 11 *Del. C.* § 4214(a) and (b)." In addition, the January 2, 2013 plea agreement which Defendant signed, indicated that Defendant was habitual offender eligible and stated, "Defendant understands that he will be sentenced as an habitual offender pursuant 11 *Del. C.* § 4214(a) on the PFBPP charge."

[89] Transcript of Sentencing, *State v. Bromwell*, No. 1205012598, Docket No. 27 (Sept. 12, 2014) (THE COURT: Can I ask you about that? The plea agreement mentioned that he might -- you understood he might be sentenced as a habitual offender, but there's no such motion filed.").

[90] *See Strickland*, 446 U.S. at 687.

committed by another person when they "[i]ntending to promote or facilitate the commission of the offense the person . . . [a]ids, counsels or agrees or attempts to aid the other person in planning or committing [the offense]."[91] Under Delaware law, Defendant a jury could have reasonably found Defendant guilty of Robbery in the First Degree under an accomplice liability theory.

The day before the robbery, Defendant relayed information about where the money was located within the barbershop to Santos, Deputy, and Johnson. During the robbery, Defendant gave hand gestures indicating to Johnson and Deputy when they should enter the barbershop. After the robbery, Defendant destroyed evidence when he took a bag, a purse, a blue jacket, pants, and other belongings to a motel and discarded them in a dumpster. Defendant further received $750 from Johnson form the proceeds of the robbery. There was ample evidence to support a conviction of Robbery in the First Degree under an accomplice liability theory and, as a result, Defendant's claim is without merit.

## V. CONCLUSION

For the reasons stated above, Defendant's Motion for Postconviction Relief is **DENIED** and conflict counsel's Motion to Withdraw is **GRANTED**. Conflict counsel has a continuing duty, which is limited to notifying the Defendant of the Court's ruling and advising the Defendant of the right to appeal, the rules for filing a timely notice of appeal, and that it is the Defendant's burden to file a notice of appeal if desired.

**IT IS SO ORDERED.**

_____
**M. Jane Brady**
Superior Court Judge

---

[91] 11 *Del. C.* § 271(2)(b).